IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| v.  § | Case No. 21-CR-00022-KBJ |
| § | |
| § | |
| CHRISTOPHER RAY GRIDER, § | |
| § | |
| *Defendant* § | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS
COUNT FOUR OF THE INDICTMENT**

TO THE HONORABLE KETANJI BROWN JACKSON, UNITED STATES DISTRICT COURT JUDGE FOR THE DISTRICT OF COLUMBIA:

COMES NOW CHRISTOPHER RAY GRIDER, the Defendant in the above styled and numbered cause, by and through undersigned counsel, and submits the following memorandum in support of his Motion to Dismiss Count Four of the Indictment.

**I.   Introduction and Background**

Mr. Grider is charged by indictment for acts alleged to have been committed at the United States Capitol Building on January 6, 2021. (Doc. No. 16). He was originally charged by complaint with the offenses of destruction of government property in violation of 18 U.S.C. § 1361, unlawful entry into a restricted building or grounds in violation of 18 U.S.C. §§ 1752(a)(1) and (b), and violent entry and disorderly conduct on Capitol Grounds in violation of 40 U.S.C. § 5104(e)(2). (Doc. No. 1).

Immediately prior to his detention hearing, however, the Government sought

1

and obtained the instant indictment which added additional charges, including, relevant to this motion, the allegation in Count Four that on or about January 6, 2021, Mr. Grider "attempted to, and did corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and engaging in disorderly and disruptive conduct and destroying federal property" in violation of 18 U.S.C. §§ 1512(c) and 2.

Although Count Four labels the charge as "Obstruction of an Official Proceeding," Section 1512 titles the offense as, "Tampering with a witness, victim, or an informant." This gives rise to the problem with Count Four.

Section 1512 falls under Chapter 73 of Title 18 which deals with "Obstruction of Justice." *See generally* 18 U.S.C. §§ 1501–1521. As one court has carefully considered and recognized, based on the plain language of the statute, an offense under Section 1512(c) does not prohibit the obstruction of every governmental function; it only prohibits the obstruction of proceedings related to the administration of justice that take place before a tribunal. *See United States v. Ermoian*, 752 F.3d 1165, 1171 (9th Cir. 2013). Stated differently, Section 1512(c), by its plain language, does not criminalize the obstruction of legislative action by Congress or a proceeding like the certification of the electoral college vote.

The flaw in Count Four of the indictment is that it fails to specify what "proceeding before Congress" Mr. Grider allegedly obstructed and, more importantly, whether it relates to the administration of justice. Because there are certain proceedings before Congress, such as a congressional committee acting in a capacity related

to the administration of justice, that could arguably fall within the criminal conduct proscribed by Section 1512(c), but other proceedings, like ceremonial proceedings or legislative action before the Senate or House of Representatives, which clearly do not, it is an essential element of the charged offense and necessary for the indictment to provide Mr. Grider and this Court with notice of what "proceeding before Congress" Mr. Grider allegedly obstructed. As an essential element, the failure to allege it renders the indictment insufficient and this Court must therefore dismiss the count.

## II. The Indictment is Insufficient Because it Fails to Specify the "Proceeding Before Congress" that Mr. Grider Allegedly Obstructed

Mr. Grider acknowledges that this Honorable Court is well aware of the legal standards applicable to determining the sufficiency of an indictment having considered a motion to dismiss the indictment in the case, *United States v. Hillie*, 227 F.Supp.3d 57 (D.D.C. 2017). As this Court correctly recognized, the sufficiency of an indictment implicates "at least two core constitutional protections": (1) the Sixth Amendment's right of an individual accused of a crime "to be informed of the nature and cause of the accusation" and, (2) the Fifth Amendment's guarantee that a criminal defendant may only be prosecuted for offenses, the elements of which have been considered and found to exist by a grand jury such that the defendant may not be subject to multiple prosecutions for the same offense. *Id.* at 69–70 (citations omitted). Federal Rule of Criminal Procedure 7(c)(1) applies these constitutional mandates by requiring that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged...." FED. R. CRIM. P. 7(c)(1).

While Mr. Grider finds it unnecessary to recite this Court's opinion in *Hillie* which adequately sets out the law related to the requirements of an indictment, *see Hillie*, 227 F.Supp.3d at 69–71, he would direct this Court to the Supreme Court decision in *Russell v. United States*, 369 U.S. 749, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962), given its relevance to this case. In that case, the Court held that an indictment charging a defendant with refusing to answer questions before a congressional subcommittee was insufficient and affirmed its dismissal where the indictment failed to allege the subject of the congressional committee's inquiry, an essential element of the offense. *Id.* at 754–55, 771–72. As the Court noted, "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Id.* at 764. The Court noted that, for the specific charged offense in that case, a violation of 2 U.S.C. § 192 involving the refusal to answer questions before Congress, "the very core of criminality under [that statute] is pertinency to the subject under inquiry of the questions which the defendant refused to answer." *Id.* at 764. Hence, the indictment's failure to identify the subject under inquiry was "thus the violation of the basic principle 'that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, * * *.'" *Id.* at 766 (quoting *United States v. Simmons*, 96 U.S. 360, 362, 24 L. Ed. 819 (1877)). Furthermore, the Court held that amending the indictment to add that critical information would not suffice as it would fail to satisfy the Fifth Amendment requirement that the grand jury consider and find all elements of the charged offense. *See id.* at 771 (citing *Stirone v.*

4

*United States*, 361 U.S. 212, 217, 80 S. Ct. 270, 273, 4 L. Ed. 2d 252 (1960)).

As it relates to 18 U.S.C. § 1512(c) — the statute that Mr. Grider allegedly violated as set out in Count Four — one case, *United States v. McGarrity*, 669 F.3d 1218 (11th Cir. 2012), has held that an indictment for obstruction under that section is likewise insufficient when it fails to specify what "official proceeding" was allegedly obstructed. *Id.* at 123–40. In that case, the defendants were charged by indictment with obstructing an official proceeding in violation of 18 U.S.C. § 1512(c). *Id.* at 1239. The indictment, however, did not specify what that official proceeding was. *Id.* The court noted this was insufficient to "'sufficiently apprise [] the defendant[s] of what [charges they] must be prepared to meet'" as the only notice given was that the defendants "obstructed an unknown official proceeding at some time in some place by some action." *Id.* (quoting *Russell*, 369 U.S. at 763).

Count Four of the indictment against Mr. Grider suffers from the same problem present in *Russell* and *McGarrity*, merely repeating the language of the criminal statute allegedly violated, in this case Section 1512(c)(2), and, like in *McGarrity*, failing to specify what "official proceeding," or more specifically, what "proceeding before Congress" was allegedly obstructed. Such information is necessary here because, like in *Russell*, "the very core of the criminality" that the statute proscribes depends on "a specific identification of fact" namely, what the "proceeding" was that Mr. Grider allegedly obstructed. *Russell*, 369 U.S. at 764. Stated differently, without knowing what "official proceeding" was allegedly obstructed, it is possible that Mr. Grider commit-

ted no criminal act whatsoever in violation of Section 1512(c)(2). This is because Section 1512(c)(2) does *not* proscribe the obstruction of any and all proceedings before Congress.

### III. Specifying the "Proceeding Before Congress" that Mr. Grider Allegedly Obstructed is an Essential Element Because the Statute Only Criminalizes Obstruction of Proceedings Related to the Administration of Justice

*Ermoian v. United States* was one of the first appellate decisions to consider the meaning of "official proceeding" as that term is used in Section 1512(c) and defined in Section 1515. *See Ermoian*, 752 F.3d at 1168 ("Our circuit has never before addressed the meaning of the term 'official proceeding' as used in the obstruction of justice statute at 18 U.S.C. § 1512."). Although that case considered whether a criminal investigation by the FBI was considered an "official proceeding" for purposes of the statute, the court noted, "[a]s used in the statute, the definition of the phrase 'official proceeding' depends heavily on the meaning of the word 'proceeding'" and further noted, "[t]hat word is used — somewhat circularly — in each of the definitions for an 'official proceeding' and is key to the phrase's meaning." *Id.* at 1169.

Looking at the plain language of Section 1515, the court explained that "[s]everal aspects of the definition for 'official proceeding' suggest that the legal — rather than the lay — understanding of the term 'proceeding' is implicated in the statute." *Id.* at 1170. As the court pointed out, "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings," and not "a mere 'ac-

tion or series of actions.'" *Id.* (citing "Proceeding," Oxford English Dictionary, available at http://www.oed.com). "Moreover, when used to define 'official proceeding,'" the court pointed to the fact that "the word 'proceeding' is surrounded with other words that contemplate a legal usage of the term, including 'judge or court,' 'Federal grand jury,' 'Congress,' and 'Federal Government agency.'" *Id.*

The court then turned to the broader statutory context, looking at Section 1515 as a whole, noting that "[t]he use of the preposition 'before' suggests an appearance in front of the agency *sitting as a tribunal.*" *Id.* at 1171 (emphasis added). The court further noted, "[a]s the Fifth Circuit explained when addressing this same definition, 'use[ of] the preposition 'before' in connection with the term 'Federal Government agency' ... implies that an 'official proceeding' involves some formal convocation of the agency in which parties are directed to appear." *Id.* (quoting *United States v. Ramos*, 537 F.3d 439, 462–63 (5th Cir. 2008)). Additionally, the court pointed out, "The use of the terms 'attendance', 'testimony', 'production', and 'summon[]' when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated." *Id.* at 1172. In conclusion, the court considered "the plain meaning of the term 'proceeding,' its use in the grammatical context of the 'official proceeding' definition, and the broader statutory context" to hold that a criminal investigation is not an "official proceeding" under Section 1512(c). *Id.*

The interpretation, reasoning, and logic applied by the court there equally applies here. Looking at Section 1512 as a whole, it is obvious that the statute solely prohibits conduct that affects the administration of justice. *See* 18 U.S.C. § 1512. The

7

statute repeatedly references "proceedings" in the context of investigations and legal proceedings related to a criminal investigation. *Id.* Even the title of the offense relates to "Tampering with a witness, victim, or an informant." *Id.*; *see I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 189, 112 S. Ct. 551, 556, 116 L. Ed. 2d 546 (1991) ("the title of a statute or section can aid in resolving an ambiguity in the legislation's text."). There is little doubt, based on the language of the statute, that the "official proceeding" — and more specifically, the "proceeding before Congress" — that is alleged to have been obstructed must relate to the administration of justice.

This is consistent with the caselaw that has considered this statute in various contexts related solely to the administration of justice. *See e.g. Arthur Andersen LLP v. United States*, 544 U.S. 696, 708, 125 S. Ct. 2129, 161 L. Ed. 2d 1008 (2005) (interpreting Section 1512(c) as requiring that the defendant have "knowledge that his actions are likely to affect [a] *judicial proceeding*" in order to have the "requisite intent to obstruct"); *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013) (considering application of Section 1512 and noting "[o]bstruction of justice occurs when a defendant acts to impede the types of proceedings that take place *before judges or grand juries*"); *United States v. Sampson*, 898 F.3d 287, 300 (2d Cir. 2018) (noting Section 1512 "broadly criminalizes various forms of witness tampering"); *United States v. Young*, 916 F.3d 368, 386 (4th Cir.), cert. denied, 140 S. Ct. 113, 205 L. Ed. 2d 33 (2019). It is even consistent with the Department of Justice's own interpretation as reflected in their Criminal Resource Manual discussing the application of Section 1512:

> Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. *It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers.*

CRIMINAL RESOURCE MANUAL, CRM 1729, Department of Justice (available at https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or) (emphasis added).

This Court can also look at the other surrounding statutory provisions in Chapter 73 to support this interpretation. *See NASDAQ Stock Mkt., LLC v. Sec. & Exch. Comm'n*, 961 F.3d 421, 426 (D.C. Cir. 2020) (quoting *Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 321, 134 S. Ct. 2427, 189 L. Ed. 2d 372 (2014)) ("A statutory provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme[,] because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law."). Each one of the statutes contained therein proscribe obstructive conduct for very specific subjects and settings related to the administration of justice. For instance, Section 1510 deals with obstruction of criminal investigations. 18 U.S.C. § 1510. Sections 1516 through 1518 criminalizes obstruction of specific types of other investigations. *See* 18 U.S.C. §§ 1516 (obstruction of a federal audit); 1517 (obstruction of examination of financial institution); 1518 (obstruction of investigations of health care offenses). Section 1519 prohibits the destruction, alteration, or falsification of records during a *federal investigation*. 18 U.S.C. § 1519.

There are also multiple statutes contained within Chapter 73 that protect the

relevant actors involved in the administration of justice such as judges, jurors, and witnesses. *See* 18 U.S.C. §§ 1503, 1504 (influencing or injuring a juror); 1513 (retaliating against a witness, victim, or informant); 1521 (retaliating against a federal judge or law enforcement officer by false claim or slander of title). There is even a statute to prohibit "picketing or parading" near the residence of a judge, juror, witness, or court officer "with the intent of interfering with, obstruction, or impeding *the administration of justice.*" 18 U.S.C. § 1507 (emphasis added). As all these laws are related to the obstruction of the administration of justice and serve to protect participants in the administration of justice, it follows that, in order to violate Section 1512(c), there must be some allegation that the "official proceeding" obstructed related to the administration of justice.

Finally, although not required due to the plain meaning of the statute, this Court can also take comfort by looking at the legislative intent behind Section 1512(c) to know what was meant by "official proceeding" as used in that statute. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568, 125 S. Ct. 2611, 2626, 162 L. Ed. 2d 502 (2005) ("Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms."). Section 1512(c) was passed as part of the Sarbanes-Oxley Act of 2002, "An Act to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to securities laws, and for other purposes." SARBANES–OXLEY ACT OF 2002, Pub. L. No. 107-204, 116 Stat. 745. The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal

prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in *certain Federal investigations*." S. REP. NO. 107-146, at 2 (2002) (emphasis added). As for the use of the term "official proceeding" in Section 1512(c), because the legislation was due in part to the collapse of Enron, the Committee Report noted that much of Enron's document destruction was "undertaken in anticipation of a SEC subpoena to Andersen for its auditing and consulting work related to Enron." *Id.* at 4. Congress was adamant that "[w]hen a person destroys evidence with the intent of obstructing any type of investigation and the matter is within the jurisdiction of a federal agency, overly technical legal distinctions should neither hinder nor prevent prosecution and punishment." *Id.* at 6–7. In short, when considering the Act's preamble and the legislative history, it is clear that Section 1512(c) was aimed at preventing corporations from destroying records relevant to federal securities investigations and was not intended to apply in all contexts of various governmental functions.

Because Section 1512(c) only applies to an "official proceeding" related to the administration of justice — as opposed to a general governmental function — and proscribes only that conduct that corruptly interferes or impedes that administration of justice, it is a necessary for the indictment to set out the specific "official proceeding" that Mr. Grider allegedly obstructed and whether it was a proceeding related to the administration of justice. This is necessary to inform this Court, and more importantly, Mr. Grider "with reasonable certainty, of the nature of the accusation against him" and to ensure that it falls within the conduct proscribed by the statute.

*See Russell*, 369 U.S at 766.

Because Count Four fails to specify the "official proceeding" and, more specifically, the "proceeding before Congress" Mr. Grider allegedly obstructed, this count of the indictment is insufficient and this Court must therefore dismiss that count.

IV. **If this Court Finds that the Indictment Sufficiently Notifies Mr. Grider that the Proceeding Before Congress that he Allegedly Obstructed was the Certification of the Electoral College Vote, the Indictment Still Fails to State an Offense and Must Be Dismissed**

As this Court has recognized, when considering the sufficiency of the charge in an indictment, a court "'is limited to reviewing the *face* of the indictment and, more specifically, the *language* used to charge the crimes.'" *Hillie* 227 F.Supp.3d at 107 (quoting *United States v. Sunia*, 643 F.Supp.2d 51, 60 (D.D.C. 2009) (emphasis in original)). As set out *supra*, when considering just the face of the indictment and the language used in Count Four, that count of the indictment is insufficient and must be dismissed on that basis alone.

Of course, Mr. Grider acknowledges that, although not stated in the indictment, this Court and the parties are well aware that the "proceeding before Congress" that Mr. Grider allegedly obstructed was the certification of the electoral college vote for the 2020 Presidential Election. *See* Doc. No. 1 (complaint). Mr. Grider submits, in the alternative, if this Court were to hold that the present indictment sufficiently notifies him of the nature of the charges against him in compliance with the constitutional protections afforded him under the Fifth and Sixth Amendments, as well as

Rule 7(c)(1) of the Federal Rules of Criminal Procedure, the indictment is still insufficient as it fails to state an offense. More specifically, as set out *supra*, 18 U.S.C. § 1512(c)(2) only prohibits the corrupt obstruction of proceedings before Congress related to the administration of justice such as a congressional committee investigating a violation of the law where witnesses are subpoenaed to appear and give testimony or to provide relevant evidence. It does not prohibit the obstruction of a proceeding before Congress like the certification of the electoral college vote, a proceeding wholly unrelated to the administration of justice. If the allegation is that Mr. Grider obstructed the certification of the electoral college vote, that would not be a crime under 18 U.S.C. § 1512(c).

This is undoubtedly a case of the Government overcharging a person for conduct that is more specifically proscribed elsewhere. 18 U.S.C. § 1752(a)(2), which Mr. Grider is charged with violating in Count Three of the indictment, prohibits a person from "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." Additionally, 40 U.S.C. § 5104, which Mr. Grider is charged with violating in Counts Five through Seven, prohibits violent entry and disorderly conduct on Capitol Grounds or within the Capitol Building. These statutes adequately prohibit the conduct that Mr. Grider allegedly engaged in.

No court has ever interpreted an "official proceeding" as that term is used in

Section 1512(c) to apply to a legislative or ceremonial function such as the certification of the electoral college vote. Let there be no question that the Government is asking this Court to go well beyond the plain meaning of the term "proceeding," its use in the grammatical context of the "official proceeding" definition, the broader statutory context, and the legislative history to allow this prosecution to go forward. Mr. Grider is confident this Court will follow the law and the plain language of the statute to limit the Government's overreach and find that Count Four should be dismissed.

WHEREFORE, PREMISES CONSIDERED, Mr. Grider respectfully requests this Honorable Court dismiss Count Four of the Indictment against him.

Date: <u>March 22, 2021</u>               Respectfully Submitted,

                                                MAYR LAW, P.C.

                                                by: <u>/s/ T. Brent Mayr</u>
                                                T. BRENT MAYR
                                                Texas State Bar Number 24037052
                                                bmayr@mayr-law.com

                                                5300 Memorial Dr., Suite 750
                                                Houston, TX 77007
                                                Telephone:  713-808-9613
                                                Fax:  713-808-9613

                                                ATTORNEY FOR THE DEFENDANT,
                                                CHRISTOPHER RAY GRIDER

                                                *Admitted to Appear Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this memorandum was sent to Counsel for the Government, Candice Wong, on March 22, 2021, via CM/ECF and email.

/s/ T. Brent Mayr  
T. BRENT MAYR