## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **No. 1:21-CR-00022-KBJ** |
| | **:** | |
| **CHRISTOPHER RAY GRIDER** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT FOUR OF THE INDICTMENT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's Motion to Dismiss Count Four of the Indictment, which charges the defendant with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2).  Although the defendant complains of deficient "notice," his own pleading concedes that he is "well aware" of the official proceeding he is alleged to have obstructed – namely, the Joint Session of Congress convened on January 6, 2021 to certify the Electoral College vote in the 2020 Presidential Election.  The defendant has had ample notice of that fact, and his indictment comports with the requirements of the Constitution and Federal Rule of Criminal Procedure 7(c).  Moreover, that Joint Session of Congress – a proceeding enshrined in and prescribed by the United States Constitution and federal law – plainly constitutes "a proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and thus an "official proceeding" under § 1512(c)(2).  The defendant's motion is unsupported by the law and facts of this case, and should be denied.

### ARGUMENT
#### Background and Relevant Legal Authorities

1

On January 20, 2021, the defendant was charged by complaint for his actions on January 6, 2021, when large crowds breached the U.S. Capitol Building as Congress convened in a Joint Session to certify the Electoral College vote in the 2020 Presidential Election.  The affidavit supporting the complaint detailed at length the commencement of the Joint Session around 1:00 p.m. in the Capitol Building, the unlawful entry of crowd members into the Building without authorization, the halting of "[t]he Joint Session and all proceedings of the U.S. Congress" while "law enforcement worked to restore order and clear the Capitol of the unlawful occupants,"  and the resumption of the Joint Session around 8:00 p.m., "approximately six hours after the crowd breached the Capitol." D.E. 1-1 at 3-4.  The affidavit further described how video footage showed the defendant, among other things, in front of the Speaker's Lobby doorway, attempting to push open those doors, and handing a helmet to another individual who was attempting to break the glass and who then used the defendant's helmet to break the glass.  The complaint thus charged the defendant with destroying government property in violation of 18 U.S.C. § 1361; knowingly entering or remaining in a restricted building without authority, or knowingly engaging in disorderly conduct therein, in violation of 18 U.S.C. § 1752(a); and knowingly engaging in disorderly or disruptive conduct in a Capitol Building with the intent to "disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of any deliberations of either House of Congress" in violation of 40 U.S.C. § 5104(e)(2). D.E. 1-1 at 1-2.

On January 26, 2021, a grand jury in the District of Columbia returned a seven-count indictment of the defendant.  In addition to violations of 18 U.S.C. § 1361 (and 18 U.S.C. § 2) (Destruction of Government Property over $1,000), 18 U.S.C. § 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds) and § 1752(a)(2) (Disorderly and Disruptive

Conduct in a Restricted Building or Grounds), and 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct

in a Capitol Building), § 5104(e)(2)(E) (Impeding Passage through the Capitol Building), and

§ 5104(e)(2)(F) (Act of Physical Violence in the Capitol Building), the indictment charged the

defendant with a violation of 18 U.S.C. § 1512(c)(2) (and 18 U.S.C. § 2) (Obstruction of an

Official Proceeding).

Section 1512(c)(2) of Title 18 of the U.S. Code provides that "[w]hoever corruptly . . .

obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under

this title or imprisoned not more than 20 years, or both."

The "Definitions" provision, 18 U.S.C. § 1515, states that "[a]s used in section[] 1512,"

(1) the term 'official proceeding' means—
    (A) a proceeding before a judge or court of the United States … or a Federal grand jury;"
    (B) *a proceeding before the Congress;*
    (C) a proceeding before a Federal Government agency which is authorized by law; or
    (D) a proceeding involving the business of insurance … before any insurance regulatory official or agency…."

18 U.S.C. § 1515(a)(1) (emphasis added).

Federal Rule of Criminal Procedure 7(c)(1) governs the "Nature and Contents" of an

indictment.  The rule states, in relevant part, that "[t]he indictment … must be a plain, concise, and

definite written statement of the essential facts constituting the offense charged," and that "[f]or

each count, the indictment or information must give the official or customary citation of the statute,

rule, regulation, or other provision of law that the defendant is alleged to have violated."

## Analysis

The defendant's motion to dismiss his charged violation of 18 U.S.C. § 1512(c)(2)

essentially advances two claims: first, that the defendant is not on "notice" as to what "official

proceeding" he allegedly obstructed, and second, that as a matter of law the Joint Session of

Congress convened for the Electoral College vote certification is not an "official proceeding" under § 1512(c). Both claims are meritless, and this Court should reject the motion.

I.     **The Defendant Has Adequate Notice of What "Official Proceeding" He is Charged With Obstructing.**

The defendant first contends that he has not been given "adequate notice of what he is charged with," D.E. 21 at 2, and specifically, notice of "what 'proceeding before Congress' Mr. Grider allegedly obstructed," D.E. 21-1 at 2. Those contentions contradict his own conceded knowledge of what he is charged with and misstate what is required of an indictment.

As an initial matter, "notice" is a red herring. The defendant's suggestions that he has not been "'sufficiently apprise[d]'" of what charges he "'must be prepared to meet,'" that he lacks "'reasonable certainty, of the nature of the accusation against him,'" and that he is left "without knowing what 'official proceeding' was allegedly obstructed," D.E. 21-1 at 5, 11, are contradicted by his own pleading. As the defendant concedes paragraphs later, "this Court and the parties are *well aware* that the 'proceeding before Congress' that Mr. Grider allegedly obstructed was the certification of the electoral college vote for the 2020 Presidential Election." D.E. 21-1 at 12 (emphasis added). In short, the defendant knows which proceeding he allegedly sought to obstruct.

The defendant is "well aware" of that fact because he received ample notice from the indictment itself, *see infra*, as well as the criminal complaint, which devoted a page and half to detailing the commencement, disruption, and resumption of the Joint Session of Congress to affirm the Electoral College vote on January 6, 2021. He received additional notice at his detention hearing and its related filings in the Western District of Texas. *See* 21-MJ-33 (W.D. Tex.), Det. Hrg Tr. 17 ("He was at the front lines, breaching a secure location with violence after disrupting Congress performing a constitutional duty."); 21-MJ-33 (W.D. Tex.), D.E. 18 at 2 ("Mr. Grider does not contend that this information has any bearing on whether he forcefully entered the United

States Capitol Building on January 6, 2021, as Congress convened in Joint Session to affirm the

Electoral College vote in the 2020 Presidential Election….”); 21-MJ-33 (W.D. Tex.), D.E. 23 at 5

(same).  And he received still more notice in connection with his motion to revoke detention in

this jurisdiction, *see* D.E. 11 at 2 (“the defendant admitted to being inside the United States Capitol

Building that day, when it was breached by large crowds as Congress convened in a Joint Session

to affirm the Electoral College vote in the 2020 Presidential Election”), and in materials

subsequently provided in discovery.  Defendant himself has claimed that he was “presen[t] in the

Capitol” because “[h]e wanted his voice to be heard,” effectively acknowledging the proceeding

underway before those very Members of Congress he wished “to be heard” by.  21-MJ-33 (W.D.

Tex.), D.E. 22 at 5.  There is no basis for suggesting that the defendant is unable to sufficiently

understand what conduct he is being charged for or to prepare his defense.[1]

Nor is there any defect in the indictment.  To be sufficient under the Constitution, an

indictment “need only inform the defendant of the precise offense of which he is accused so that

he may prepare his defense and plead double jeopardy in any further prosecution for the same

offense.” *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014); *see United States v. Resendiz-*

*Ponce*, 549 U.S. 102, 108 (2007).  Federal Rule of Criminal Procedure 7(c) effectuates that

understanding, requiring “a plain, concise, and definite written statement of the essential facts

constituting the offense charged.”  As this Court has stated, “‘an indictment must contain every

---

[1] Even if the defendant had lacked notice, a Bill of Particulars and not dismissal would be the
appropriate remedy where the indictment is facially valid. *See United States v. Hajecate*, 683 F.2d
894, 898 (5th Cir. 1982); *United States v. Hillie*, 227 F. Supp. 3d 57, 81 (D.D.C. 2017).  But the
defendant does not even meet the threshold for a Bill of Particulars, which requires that he
“demonstrate surprise or prejudice by the lack of particularization.” *United States v. Pollack*, 534
F.2d 964, 970 (D.C. Cir. 1976); *see also United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir.
1987) (“[I]f the indictment is sufficiently specific, or if the requested information is available in
some other form, then a bill of particulars is not required.”).

element of the offense charged *and* must fairly apprise the accused *of the conduct allegedly constituting the offense* so as to enable him to prepare a defense against those allegations.'" *United States v. Hillie*, 227 F. Supp. 3d 57, 81 (D.D.C. 2017) (emphases in original).

The defendant's indictment readily meets this standard.  Section 1512(c)(2) of Title 18 of the U.S. Code penalizes a person who "corruptly obstructs, influences, or impedes any official proceeding."  Count 4 of the indictment provides that:

> On or about January 6, 2021, defendant attempted to, and did corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and engaging in disorderly and disruptive conduct and destroying federal property.

D.E. 6.  The indictment thus sets forth all the essential elements of a § 1512(c)(2) offense.  It not only tracks and echoes the statute, but it specifies the date of the obstruction ("January 6"), its precise location ("in the United States Capitol"), the acts amounting to obstruction ("entering and remaining … without authority and engaging in disorderly and disruptive conduct and destroying federal property"), and the type of official proceeding ("that is, a proceeding before Congress"). *See United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (upholding sufficiency of indictment that echoed statute while specifying time and place of the offense and identity of the threatened officer); *United States v. Williamson*, 903 F.3d 124, 131 (D.C. Cir. 2018) (same).  The defendant is in no way uncertain about what conduct of his "allegedly constitut[es] the offense." *Hillie*, 2127 F. Supp. 3d at 81.  He is in no way hamstrung in his preparation of a defense or ability to invoke double jeopardy should he be prosecuted again for this same conduct.

A sufficient indictment does not require more.  The defendant claims that the indictment's specification of the "official proceeding" as "a proceeding before Congress" must be *further* specified to state the particular proceeding before Congress.  But it is clear that specificity is not the issue.  Rather, the defendant's position is that the convening of a Joint Session of Congress to

6

certify the Electoral College vote of a Presidential Election, irrespective of whether it is stated in

the indictment, does not constitute a "proceeding before Congress."  *See* D.E. 21-1 at 10 ("in order

to violate Section 1512(c), there must be some allegation that the 'official proceeding 'obstructed

related to the administration of justice").  And to the extent his dispute ultimately lies with *why*

that Joint Session of Congress counts as a "proceeding before Congress"—not *which* "proceeding

before Congress" he obstructed—that argument (which in the government's view is meritless, *see*

*infra*) has nothing to do with the specificity or sufficiency of the indictment.  The defendant cannot

and does not point to an omitted element or ambiguity in the indictment that deprives him of a

reasonable understanding of what he stands accused of.[2]

At bottom, there was no infirmity in the indictment.  The language fairly informed the

defendant of the charge against him in accordance with both the Constitution and Rule 7(c).

## II.     The Electoral College Vote Plainly Constitutes "A Proceeding Before Congress" and Thus An "Official Proceeding."

The defendant further argues that even if he received sufficient notice that the "official

proceeding" he obstructed was the Joint Session of Congress certifying the Electoral College vote,

that Joint Session does not constitute a "proceeding before Congress" or, therefore, an "official

---

[2] In *United States v. Williamson*, Williamson was charged with "threatened assault with intent to retaliate against the officer on account of the performance of official duties." The D.C. Circuit explained that *which* "official duty" was at issue was "not at all 'central to every prosecution under the statute'" nor "'the very core of criminality' under the statute."  903 F.3d at 131; *see also Resendiz-Ponce*, 549 U.S. at 108-09 (indictment's "word 'attempt'" adequately encompassed "three overt acts" performed in the attempt; overt acts did not need to be specified).  The statute was written "not to draw attention to a particular official duty, but to assure that the threat generally relates to the officer's performance of official duties rather than to a personal dispute." *Williamson*, 903 F.3d at 131.  Here too, "official proceeding" serves to generally assure that the obstruction pertains to proceedings of some governmental significance or formality.  Which "proceeding before Congress" is at issue is not determinative of criminality and is irrelevant:  As the statute makes clear, *all* "proceedings before Congress" are "official proceedings."

proceeding" under 18 U.S.C. § 1512(c)(2).  This contention flies in the face of the statute's plain language and core precepts of statutory interpretation.

The term "official proceeding" in § 1512(c)(2) is not left undefined; Congress defined it by statute in an accompanying "Definitions" provision in 18 U.S.C. § 1515(a).  As the definition states in no uncertain terms, "the term 'official proceeding' means … a proceeding before the Congress." 18 U.S.C. § 1515(a)(1)(B).  That language is broad and without limitation.  *See United States v. Ermoian*, 752 F.3d 1165, 1168 (9th Cir. 2013) ("We begin, as any effort to interpret a statute must, with the text.").

The Joint Session of Congress to certify the Electoral College vote is plainly a "proceeding" that takes places "before the Congress."  The Electoral College vote is a proceeding enshrined in and prescribed by the United States Constitution and federal law – chiefly, 3 U.S.C. § 15, a provision of the Electoral Count Act of 1887.  The Constitution mandates that the counting of electoral votes occur at a Joint Session:  The "President of the Senate shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted."  U.S. Const. Art. II, Section 1; Amendment XII.   The "Vice President of the United States" presides over that Joint Session as part of his constitutional duty as "President of the Senate."  U.S. Const.  Art. I, Section 3.  The date and time for that Joint Session are fixed by law as "the sixth day of January" and "the hour of 1 o'clock in the afternoon."  3 U.S.C. § 15.  And the conduct of the proceeding is laid out in detail in § 15, including procedures that govern the opening of votes; the reading of votes by House and Senate tellers; the counting of votes and announcement of the result; and the process of making and acting on objections.  Related statutory provisions, 3 U.S.C. §§ 16 and 18, govern the seating of Senators, Representatives, and officials, and provide procedures for ensuring that the Joint Session conducts its business expeditiously.

Accordingly, the Electoral College vote certification is unassailably a "proceeding before the Congress" because it *requires* the convening of a Joint Session of Congress, and its procedures are specifically contemplated – and indeed recognized as among the most momentous of official proceedings – by federal law and the Constitution.   The definition in 18 U.S.C. § 1515(a)(1) indicates that *all* proceedings before Congress are "official proceedings" under § 1512(c)(2)—but whatever falls within the outermost edges of the definition, the Electoral College vote certification falls squarely within its ambit.

The defendant nonetheless contends that only "proceedings before Congress *related to the administration of justice*" qualify as "official proceedings."  D.E. 21-1 at 13 (emphasis added). Even assuming arguendo that the Electoral College vote certification—execution of a constitutional duty and federal law fundamental to our system of governance—is unrelated to the "administration of justice," this crabbed reading finds no support in statutory text or caselaw. "Statutory construction must begin with the language employed by Congress"—here, "a proceeding before the Congress"—and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."  *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011); *see also Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

The defendant places heavy reliance on *United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013), a single out-of-Circuit decision that involved a different statutory definition, 18 U.S.C. § 1515(a)(1)(C), and distinct issue: whether an FBI investigation counts as "a proceeding before a Federal Government agency which is authorized by law" under § 1515(a)(1)(C).  In *Ermoian*, the Ninth Circuit reasoned at the outset that the term "proceeding" did not "conclusively resolve

9

whether an FBI investigation qualifies" because narrower definitions of the term "would exclude criminal investigations in the field." 752 F.3d at 1170. That is the not the case here. The Joint Session of Congress to certify the Electoral College vote satisfies even the narrower formulations of "proceeding" cited by *Ermoian*; for instance, it would constitute "*business conducted* by a court *or other official body; a hearing*," or "[a] legal … process." *Id.* at 1169 (quoting narrower formulations in Black's Law Dictionary and Oxford English Dictionary). There can be little dispute that the Joint Session is a "proceeding … authorized *by law*" (language from § 1515(a)(1)*(C)*, which, in any event, is inapposite) or that it has the "sense of formality" that the Ninth Circuit found absent from mere criminal investigations. *Id.* at 1170; *see also id.* at 1171 (noting that use of the preposition "before" connotes "some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation").

The defendant notes that the title of the statute as a whole, 18 U.S.C. § 1512, speaks of "Tampering with a witness, victim, or an informant." D.E. 21-1 at 8. But courts have followed "the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text." *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947); *see Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("[O]ur analysis begins with 'the language of the statute.' And where the statutory language provides a clear answer, it ends there as well."). The defendant similarly cites various cases that have made references associating the statute with "witness tampering" or "judicial proceedings." But witness tampering and obstruction-in-judicial-proceedings are common examples of scenarios to which § 1512 is applied. Nothing about those illustrative applications speak to the full reach of § 1512(c)(2), much less alter or curtail the straightforward meaning of § 1512(c)(2) and its definition in § 1515(a)(1).

Other provisions outside § 1512, such as those elsewhere in Chapter 73, have even less bearing on the plain meaning of § 1512(c)(2).  If anything, those neighboring provisions—which criminalize obstruction of other types of investigations and protect judges, jurors, witnesses and the like—merely underscore how robustly Congress sought to penalize obstructive conduct across a vast range of settings.  That Congress wished to penalize efforts to obstruct everything from a federal audit to a bankruptcy case to an examination by an insurance regulatory official only crystallizes that it is more the acts of obstructing, influencing, or impeding—than the particular type of hearing—that lie at "'the very core of criminality' under the statute[s]."  *Williamson*, 903 F.3d at 131.

Finally, the defendant points to statutes beyond Chapter 73 altogether—18 U.S.C. § 1752(a)(2) and 40 U.S.C. § 5104—asserting that they "more specifically" and "adequately" prohibit the conduct that Mr. Grider allegedly engaged in."  D.E. 21-1 at 13.   But each of the statutes is different in scope; they proscribe different activity, have different elements, and carry different penalties.  And in any event, the Supreme Court has said repeatedly that "Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct."  *Hubbard v. United States*, 514 U.S. 695, 715 n.14 (1995); *see also United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.").  Whatever overlap exists between the statutes is no license to manufacture textual uncertainties where there are none, nor alter the plain meaning of § 1512(c)(2).

In short, a Joint Session of Congress to certify the Electoral College vote constitutes a "proceeding before the Congress."  The defendant's conduct falls squarely within the ambit of 18 U.S.C. § 1512(c)(2).

## CONCLUSION

WHEREFORE, the United States respectfully requests that the defendant's Motion to

Dismiss be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
United States Attorney
D.C. Bar No. 415793

By:     Candice C. Wong
D.C. Bar No. 990903
Assistant United States Attorney
555 4th Street, N.W., Room 4816
Washington, D.C. 20530
(202) 252-7849
candice.wong@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2021, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

Candice C. Wong
Assistant United States Attorney