**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER RAY GRIDER,<br>Defendant | Criminal Action No. 21-0022 (CKK) |

**MEMORANDUM OPINION**
(February 9, 2022)

This criminal case is one of several hundred arising from the insurrection at the United States Capitol on January 6, 2021. For his actions at the Capitol on January 6, Defendant Christopher Ray Grider ("Defendant" or "Grider") is charged by indictment with one felony and six misdemeanor counts. Before the Court is Defendant's [69] Amended Motion to Dismiss Count Four of the Indictment, the sole felony count. Upon consideration of the briefing,[1] the relevant legal authorities, and the entire record, the Court shall **DENY** Defendant's Motion.

**I.   BACKGROUND**

Defendant is charged by indictment with: (1) Destruction of Government Property and Aiding and Abetting, in violation of 18 U.S.C. § 1361-62; (2) Entering and Remaining in a

---

[1] The Court's consideration has focused on:
- Defendant's Memorandum of Law in Support of Defendant's Amended Motion to Dismiss Count Four of the Indictment, ECF No. 70-2 ("Motion" or "Mot.");
- The Government's [74] Opposition to Defendant's Amended Motion to Dismiss Count Four of the Indictment, ECF No. 74 ("Opp.");
- Defendant's Reply to the Government's Opposition to Defendant's Amended Motion to Dismiss Count Four of the Indictment ("Repl.");
- The Government's Affidavit in Support of its Sealed Complaint, ECF No. 1-1 ("Aff."); and
- The Indictment, ECF No. 6 ("Indictment").

In an exercise of its discretion, the Court has concluded that oral argument would not be helpful in the resolution of the Motion.

1

Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation 18 U.S.C. § 1752(a)(2); (4) Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2); (5) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); (6) Impeding Passage Through the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(E); and Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

### A. Certification of the 2020 Presidential Election and Capitol Riot

The Twelfth Amendment of the United States Constitution provides that, after the members of the Electoral College "meet in their respective states and vote by ballot for President and Vice-President," they "shall sign and certify [their votes], and transmit [them] sealed to the seat of government of the United States, directed to the President of the Senate." U.S. Const. amend. XII. The Vice President of the United States, as President of the Senate, must then, "in the presence of the Senate and House of Representatives, open all the certificates[,], and the votes shall then be counted." To count the votes and "declar[e] the result" of the Electoral College, federal law mandates that "Congress shall be in session on the sixth day of January succeeding every meeting of the electors" and that "[t]he Senate and House of Representatives shall meet in the Hall of the House at the hour of 1 o'clock in the afternoon on that day." 3 U.S.C. §§ 15-16.

Pursuant to the Constitution and federal law, Congress convened in a joint session on 1:00 PM on January 6, 2021, to count the votes of the Electoral College and certify the results of the 2020 Presidential Election, which had taken place on November 3, 2020. *See* Compl., Stmt. of Facts ("SOF") at 1, ECF No. 1-1. With then-Vice President Michael R. Pence presiding, proceedings began and continued until 1:30 PM, when the United States House of Representatives

and the United States Senate adjourned to separate chambers within the Capitol to debate and consider an objection to the Electoral College vote from the State of Arizona. *Id.* Vice President Pence continued to preside in the Senate chamber. *Id.*

Shortly before noon, then-President Donald J. Trump took the stage at a rally of his supporters staged just south of the White House. *Trump v. Thompson*, 20 F.4th 10, 17 (D.C. Cir. 2021). Then-President Trump declared that the election was "rigged" and "stolen," and urged the crowd to "demand that Congress do the right thing and only count the electors who have been lawfully slated." *Id.* at 18 (cleaned up). During and after then-President Trump's speech, a mass of attendees marched on the Capitol. *See id.*

As they gathered outside the Capitol, the crowd faced temporary and permanent barricades and Capitol Police positioned to prevent unauthorized entry to the Capitol. Aff. at ¶ 6. Shortly after 2:00 p.m., "crowd members forced entry into the Capitol building, including by breaking windows and assaulting Capitol Police officers, while others in the crowd encouraged and assisted those acts." *Id*. These violent acts caused members of the Senate and House of Representatives to evacuate the chambers of the Capitol and suspend the certification process of the presidential election results. *Id.* at ¶ 7. The violent riot "desecrated [the Capitol], blood was shed, and several individuals lost their lives." *Thompson*, 20 F.4th at 19. All told, "[t]he events of January 6, 2021 marked the most significant assault on the Capitol since the War of 1812." *Id.* at 18-19 (footnote omitted).

### B. Events Specific to Defendant

Defendant is one of more than 700 individuals charged with federal crimes for his conduct on January 6th. According to the allegations in the Indictment and the Affidavit in

Support of Criminal Complaint, ECF No. 1-1,[2] Defendant traveled from central Texas to the District of Columbia for then-President Trump's rally. *See* Aff. at ¶ 10. After the rally, Grider made his way to the Capitol and entered the building with the crowd. *Id.* at ¶ 13. Once inside, Defendant continued all the way to the doors of the Speaker's Lobby, an area directly outside of and with access to the Floor of the United States House of Representatives. *See id.* at ¶¶ 10, 15. The photos included in the Affidavit show that only three Capitol police officers, two doors, and stacked furniture separated the mob from Members of Congress huddled behind the doors to the Floor. *See id.* ¶¶ 11, 15. The photos show Grider at the very front of the mob, "attempt[ing] to push open the doors and then kick the doors in an attempt to breach the entrance leading to the House Chamber." *Id.* at ¶ 15. The Affidavit also alleges that Grider handed a black helmet to another rioter to assist the rioter in breaking open the windows on the doors. *Id.* That rioter succeeded and another rioter standing next to Grider jumped through the broken window. *Id.* As she jumped through the window, she was shot by a Capitol Police officer guarding Members of Congress. *Id.* at 16. Grider later told a local news station that he was present when that rioter was shot; "[a]t that point we were all panicked, we couldn't leave because there were thousands of people behind us pushing us forward." *Id.* at 10.

### C. Procedural History

On January 26, 2021, a grand jury in the District of Columbia returned the seven-count

---

[2] "It is appropriate if not necessary to rely on other official documents for the specific factual allegations underlying the [] Indictment, as the indictment itself contains few, if any, details about [Defendant's] alleged conduct." *United States v. McHugh*, --- F Supp. 3d ---, 2022 WL 296304 at *2 n.2 (D.D.C. Feb. 1, 2022) (JDB); *accord United States v. Mostofsky*, Crim. Action No. 21-138, 2021 WL 6049891 at *1 (D.D.C. Dec. 21, 2021) (JEB). In his reply, Defendant asks the Court to consider several videos outside the record. Repl. at 3. As the government has not addressed those videos and they are, in any event, irrelevant to the Court's resolution of purely legal questions of statutory interpretation, the Court shall not consider them. *See United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (when considering a challenge to the indictment, "a district court is limited to reviewing the *face* of the indictment").

indictment against Defendant.  On February 22, 2021, Defendant entered a plea of "not guilty" and the Court released him on personal recognizance with conditions.   Defendant filed his initial motion to dismiss Count Four of the Indictment on March 22, 2021.  Per Defendant's request, Min. Order (May 4, 2021), the Court held the motion in abeyance until Defendant filed his [69] Amended Motion.  With the Motion fully briefed, the Court now turns to its resolution.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b)(3), a criminal defendant may, before trial, move to dismiss a count of the indictment based on a "defect in the indictment."  As relevant here, defects include "failure to state an offense."  *Id.*  "Failure to state an offense" may be due to a question of statutory interpretation or a constitutional issue.  *See United States v. Stone*, 394 F. Supp. 3d 1, 8 (D.D.C. 2019).  When considering a challenge to the indictment, "a district court is limited to reviewing the face of the indictment;" the Court must "presume the allegations [in the] indictment to be true."  *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (internal quotation marks removed).  "The operative question is whether [those] allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed."  *United States v. Sanford Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012).

## III.     DISCUSSION

Count Four of the Indictment charges Defendant with Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2).  Pursuant to section 1512(c):

> Whoever corruptly—
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> (2) otherwise obstructs, influences, or impedes any official proceeding or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

*Id.* (2021 West).  In support of dismissal, Defendant advances four broad arguments.  First, Defendant maintains that the certification of the vote of the Electoral College is not an "official proceeding" within the meaning of section 1512(c)(2).  Mot. at 4.  Second, Defendant insists that subsection 2's residual clause only applies to witness or evidence tampering and not to *any* obstructive act.  *Id.* at 17.  Third, Defendant argues that the statute's *mens rea*, "corruptly," is unconstitutionally vague as applied to Grider.  *Id.* at 31. Fourth and finally, Defendant suggests that the rule of lenity otherwise controls and should lead to a limited reading of the statute. *Id.* at 51. As Defendant admits, six judges of this Court have already "addressed and rejected" these same arguments "in one form or another."[3]  This Court shall be the seventh.

## A. Official Proceeding

The plain meaning of the statutory text renders the review, count, and certification of the Electoral College vote an "official proceeding" within the meaning of 1512(c)(2).  For the purposes of 1512(c)(2), an "official proceeding" is defined as:

(A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
(B) a proceeding before Congress;
(C) a proceeding before a Federal Government agency which is authorized by law; or
(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce.

---

[3] *United States v. Sandlin*, --- F. Supp. 3d ---, 2021 WL 5865006 (D.D.C. Dec. 10, 2021) (DLF); *United States v. Caldwell*, --- F. Supp. 3d ---, 2021 WL 6062718 (D.D.C. Dec. 20, 2021) (APM); *United States v. Mostofsky*, Crim. Action No. 21-138, 2021 WL 6049891 (D.D.C. Dec. 21, 2021) (JEB); *United States v. Montgomery*, Crim. Action No. 21-46, 2021 WL 6134591 (D.D.C. Dec. 28, 2021) (RDM); *United States v. Nordean*, Crim. Action No. 21-175, 2021 WL 6134595 (D.D.C. Dec. 28, 2021) (TJK); *United States v. McHugh*, --- F. Supp. 3d ---, 2022 WL 296304 (D.D.C. Feb. 1, 2022) (JDB).

18 U.S.C. § 1515(a)(1). As Judge John Bates explained, collecting cases, "[r]ather than '[t]he carrying on of an action or series of actions,' *Proceeding*, Oxford English Dictionary (3d ed. 2007); § 1515(a)(1) uses the term in its narrower, legal sense: 'the business conducted by a court or other official body; a hearing,' *Proceeding*, Black's Law Dictionary (11th ed. 2019)." *McHugh*, 2022 WL 296304 at *5 (citing *Sandlin*, 2021 WL 5865006 at *3; *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013)). Defendant is correct that not every "proceeding" before Congress is an "official proceeding." This conclusion naturally follows from the modifier "official," which means "formal" or "ceremonious." *Official*, Oxford English Dictionary (3d ed. 2004); *Sandlin*, 2021 WL 5865006 at *3. Therefore, *in*formal or mundane activities by Congress cannot be "official proceedings" within the meaning of section 1515. *See Ermoian*, 752 F.3d at 1172 (holding an FBI investigation is not a "proceeding before a Federal Government agency" because it is insufficiently ceremonious).

Few Congressional events could be more ceremonious and formal than the quadrennial Joint Session of Congress mandated by the Constitution and federal statute. The Vice President of the United States, as President of the Senate, must preside over a process "by which objections can be heard, debated, and ruled upon." *Sandlin*, 2021 WL 5865006 at *4. Federal law provides for the placement of attendees with the Speaker of the House to the left of the Vice President, the Senators "in the body of the Hall" to the right of the presiding officer, the Representatives "in the body of the Hall not provided for the Senators," etc. 3 U.S.C. § 16. If a Member objects, the Senate and House of Representatives "withdraw" to their respective chambers to deliberate and render "its decision" on the objection. 3 U.S.C. § 15. Only once the "electoral votes [are] completed and the results declared" may Congress recess. *Id.* § 16.

Defendant insists that only those "official proceedings of justice or Congress' power of

inquiry or investigation where witnesses are called or evidence is presented and considered" fall within the statute.  Mot. at 2, 15.  Not so.  Section 1515(a)(1)(B) defines an "official proceeding" *only* as a "proceeding before Congress," not "a proceeding before Congress involving adjudication or evidence."  As Judge Amit Mehta explained, "Congress did not intend to limit the congressional proceedings protected under 1512(c) to only those involving its adjudicatory [or] legislative . . . functions."  *Caldwell*, 2021 WL 6062718 at *5.  Had it wanted to, Congress could have just as easily borrowed language from just a few statutory sections away.  *See* 18 U.S.C. § 1505 (criminalizing obstruction of "any inquiry or investigation [that] is being had by" Congress).  Rather it chose broader language, perhaps in recognition that, as a legislative body, the majority of its "official" functions are not quasi-adjudicative or evidentiary.  *See McHugh*, 2022 WL 296304 at *8.  In any event, the Court is not inclined to "'read[] words or elements into a statute that do not appear on its face.'"  *Sandlin*, 2021 WL 5865006 at * 4 (citing *Bates v. Unied States*, 522 U.S. 23, 29 (1997)).

Next, Defendant argues that the title of section 1512, "Tampering with a witness, victim, or informant," should control.  It does not.  Neither "the title of a statute" nor "the heading of a section" can "limit the plain meaning of the text."  *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947).  Even if it were to offer some gloss on the plain meaning of the statutory term, "[s]ection 1512(c) was added in the Sarbanes-Oxley Act, and the title of the relevant part of the Act is "Tampering with a record or *otherwise impeding an official proceeding*."  *Sandlin*, 2021 WL 5865006 at * 7 (emphasis original) (quoting § 1102, 116 Stat. at 807).

Similarly, Defendant's reliance on *United States v. Guertin*, No. 21-cr-00262 (TNM), 2022 WL 203467 (D.D.C. Jan. 24, 2022), Repl. at 9, is misplaced.  Defendant is correct that, in

that case, the court construed "official proceeding" in section 1512(c) to require a "formal tribunal." 2022 WL 203467 at *7. Yet the court reached that conclusion to hold that a security clearance investigation, like the FBI investigation in *Ermoian*, is not an "official proceeding" in part due to its lack of formality. *Id.* As such, the court confronted not 1515(a)(1)(B), governing "a proceeding before Congress," but (a)(1)(C), governing "a proceeding before a Federal agency." Moreover, even if there were some requirement that a Congressional proceeding be "adjudicatory or evidentiary," Mot. at 15, as Judge Dabney Friedrich reasoned, "the certificates of electoral results are akin to records or documents that are produced during judicial proceedings, and any objections to these certificates can be analogized to evidentiary objections." *Sandlin*, 2021 WL 5865006 at *4. Yet the Court concludes that there is no such requirement; the Joint Session of Congress to certify the Electoral College is unambiguously an "official proceeding" within the meaning of 1512(c)(2).

### B. Otherwise Obstruct, Influence, or Impede

Next, Defendant argues that the word "otherwise" in section 1512(c)(2) cabins the applicability of "obstruct[], influence[], or impede[]" to subsection (c)(1)'s prohibition on "alter[ing], destroy[ing], mutilate[ing], or conceal[ing] a record, document, or other objection . . . ." Defendant insists that subsection (c)(2) must be limited to "acts that have the same kind of evidence-obstructive impact as the listed forms of obstruction in (c)(1)—altering, destroying, mutilating, or concealing a record, document, or other object—but cause this impairment . . . in a different way or manner and/or other forms of evidence." Mot. at 24. Defendant's reading conflicts with the plain meaning of the statute.

Defendant's argument is a flavor of the canon of statutory instruction *esjudem generis*, Latin for "of the same kind." *Ass'n of Am. R.R. v. United States*, 603 F.2d 953, 963 n.28 (D.C.

Cir. 1979). That canon provides that "'when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration.'" *Ali v. BOP*, 552 U.S. 214, 223 (2008) (quoting *Norfolk & W. R. Co. v. Train Dispatchers*, 499 U.S. 117, 129 (1991)). Defendant relies principally on *Begay v. United States*, 553 U.S. 137 (2008) which held that, in the context of the Armed Career Criminal Act, the word "otherwise" "limit[ed] the scope of the clause to the [preceding] examples themselves." *Id.* at 143. The Supreme Court was careful to note that "the word 'otherwise' *can* (we do not say *must*) refer to a crime that is similar to the listed examples in some respects but different in others." *Id.* at 144. As Judge Randolph Moss found, there is no conflict with *Begay* here insofar as "if one looks to the 'particular similarity specified after the 'otherwise' in Section 1512(c)(2), the link or similarity between the crimes covered by Sections 1512(c)(1) and (c)(2) is that both provisions apply to conduct that—directly or indirectly—'obstructs, influences, or impedes any official proceeding.'" *Montgomery*, 2021 WL 6134591 at *12.

Nor, as Defendant argues, does the word "otherwise" become surplusage if read to include conduct that does not involve tampering with a physical object. Mot. at 27. Section 1512(c) criminalizes two classes of actions: (1) tampering with evidence that may go before an official body and (2) obstructing the official body itself. *See Montgomery*, 2021 WL 6134591 at *12. As such, "'otherwise' . . . signifies a shift in emphasis,' from actions directed at evidence to actions directed at the official proceeding itself." *Id.* (citation omitted).[4] It seems natural that Congress would have created a second subsection addressing the latter as there is a class of actions that can impede or obstruct an official proceeding absent even the mere presence of

---

[4] *Accord Mostofsky*, 2021 WL 6049891 at *11; *Caldwell*, 2021 WL 6062718 at *14; *Nordean*, 2021 WL 6134595 at *7; *United States v. De Bruhl-Daniels*, 491 F. Supp. 3d 237, 252 (S.D. Tex. 2020); *United States v. Ring*, 628 F. Supp. 2d 195, 224-25 (D.D.C. 2009) ("1512(c)(2)'s application is not limited to the destruction of documents").

10

evidence. *See id.* at *16. For instance, one could envision a defendant calling in a false bomb threat to prevent a proceeding from continuing. The bomb threat does not "alter[], destroy[], mutilate[], or conceal[] a record," but it does "impede[] an[] official proceeding." It seems likely that Congress would have intended to protect the integrity of their proceedings in their entirety by enacting (c)(2)'s catchall clause. Even if not, as Judge Moss notes, "'statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.'" *Id.* (quoting *Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998)). Accordingly, the Court concludes that 1512(c)'s residual clause encompasses Defendant's alleged behavior to the extent that it did not tamper with physical evidence.

    C. **Mens Rea and Vagueness**

Defendant next argues that the statute's *mens rea*, "corruptly," is unconstitutionally vague. The Court begins from the presumption that "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963). A law is unconstitutionally vague when it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). This is a "'stringent standard.'" *Sandlin*, 2021 WL 5865006 at *10 (quoting *United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344 at *4 (D.D.C. Apr. 16, 2021)). The vagueness determination "must be made on the basis of the of the statute itself and other pertinent law, rather than on the basis of an ad hoc appraisal of the subjective expectations of particular defendants." *Bouie v. City of Columbia*, 378 U.S. 347, 355 n.5 (1964).

Defendant relies principally on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991) which found that "corruptly," undefined in 18 U.S.C. § 1505, was unconstitutionally vague as applied to the defendant's conduct of lying to Congress. *Id.* at 386. Courts have subsequently cabined *Poindexter*, including the D.C. Circuit Court of Appeals in *United States v. Morrison*, 98 F.3d 619 (1996).[5] Post-*Poindexter*, the Supreme Court had little trouble concluding that a "corruptly" *mens rea* in a similar criminal statute means, unambiguously, "wrongful, immoral, depraved, or evil" acts. *Arthur Andersen LLP v. Untied States*, 544 U.S. 696, 705 (2005) (citation omitted). Faced with an additional term, "knowingly," the Court held that the *mens rea* in that case would require a showing of "consciousness of wrongdoing" and a nexus between the action and the proceeding to be obstructed. *Id.* at 707. Relying on *Arthur Andersen*, federal Courts of Appeals vary slightly in their definition of "corruptly." *See, e.g., United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct"); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 505 F.3d 698, 705 (7th Cir. 2007) (defining "corruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"). Each, however, has settled on a definition that is not unconstitutionally vague.

Although the Court of Appeals has not yet weighed in, various judges of this Court have consistently held that "corruptly" requires (1) some degree of specific intent to obstruct and (2) a nexus between the obstruction and the proceeding to be obstructed. *McHugh*, 2022 WL 296304 at *11 (collecting cases). Because the affidavit in support of the government's Complaint alleges that Defendant "knowingly, and with the intent to impede or disrupt" used unlawful means to

---

[5] *See also United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017); *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998); *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998).

obstruct the certification of the Electoral College vote, *see* Aff. at ¶ 18, it cannot be said that defendant himself did not have fair notice that the statute criminalized the conduct alleged in the complaint. *See Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.").

Lastly, Defendant insists that the government's decision not to charge violations of 1512(c) in subsequent cases alleging similar facts renders the statute's *mens rea* "entirely arbitrary, entirely unclear, and entirely vague."[6] Mot. at 51. The government's charging decisions have no bearing on the vagueness analysis, and Defendant cites no authority to support such a proposition. Indeed, "[i]t is not unusual for a particular act to violate more than one criminal statute, and in such situations the Government may proceed under any statute that applies." *United States v. Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., concurring in part and dissenting in part). As Judge Timothy Kelly concluded, "the presence of enforcement discretion alone does not render a statutory scheme unconstitutionally vague." *Nordean*, 2021 WL 6134595 at *12. The key question on a vagueness challenge is whether the statute, "as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997). "There is little question that violent [unlawful entry and destruction of property] constitute obstructive acts" that are criminal. *See Sandlin*, 2021 WL 5865006 at *9; *Nordean*, 2021 WL 6134595 at *13 ("Section 1512(c)(2)

---

[6] In addition to highlighting other January 6th cases, Defendant suggests that a "sit-in" on the House Floor by several Democratic Members of Congress should have been charged as a violation of 1512(c)(2). As Judge Friedrich discussed, the unlawfulness of the underlying, predicate action may bear on the applicability of 1512(c)(2). *See Sandlin*, 2021 WL 5865006 at *13 ("The Court recognizes that other cases, such as those involving lawful means, will present closer questions." (citation omitted)). Although the Members' actions may have been a violation of House Rules, the Court is unaware of any criminal statute barring the presence of Members of Congress from the House Floor. As such, Defendant's proposition is quite different from the allegations here that Defendant unlawfully entered and remained in the Capitol.

is not 'narrow' at all. It sweeps broadly—punishing a host of 'corrupt' conduct. Thus, it hardly lulled Defendant[] into a false sense of security . . . ."). As such, the Court concludes that 1512(c)(2), as applied, is not unconstitutionally vague.

### D. Rule of Lenity

As a final argument, Defendant urges this Court to invoke the rule of lenity and find that his alleged conduct falls outside the scope of § 1512(c)(2). Mot. at 51–53. The rule of lenity provides that, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Cleveland v. United States*, 531 U.S. 12, 25 (2000) (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)). Even in its most robust form, the rule of lenity only applies when, "after all legitimate tools of interpretation have been exhausted, 'a reasonable doubt persists' regarding whether Congress has made the defendant's conduct a federal crime." *Abramski v. United States*, 573 U.S. 169, 264 (2014) (Scalia, J., dissenting) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)); *accord Barber v. Thomas*, 560 U.S. 474, 488 (2010) ("[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute,' such that the Court must simply 'guess as to what Congress intended.'") (citations omitted).

Because application of the rule of lenity first requires a demonstration that, even after exhausting the traditional tools of statutory interpretation, the statutory language is ambiguous, the Court must determine whether ambiguity exists in § 1512(c)(2). A criminal statute is ambiguous when, for instance, it "has two possible readings," one favorable to the defendant and the other unfavorable. *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting); *accord United States v. Santos*, 553 U.S. 507, 512 (2008) (finding a statutory term ambiguous where two plausible readings of the term existed). Defendant does not directly

address this point, which is ultimately fatal to his argument. Instead, Defendant argues that the meaning of "corruptly obstructing, influencing, or impeding a proceeding before Congress" is not "clear and definite." *See* Def.'s Mot. at 52 (quoting *Yates*, 574 U.S. at 548) (citations omitted). To the extent that Defendant argues that the rule of lenity should apply due to vagueness in the statutory language, such an argument is foreclosed by the Court's earlier finding, discussed *supra*, that § 1512(c)(2) is not unconstitutionally vague. Moreover, vagueness is a separate inquiry than that relevant to a rule of lenity analysis—vagueness is not equivalent to ambiguity. *See, e.g.*, *United States v. Lanier*, 520 U.S. 259, 266 (1997) (distinguishing vagueness doctrine from rule of lenity ambiguity); *United States v. Davis*, 139 S. Ct. 2319, 2333 (2019) (same). Moreover, Congress is not prohibited from drafting statutes that sweep broadly, so long as it is clear what is criminalized. *See Yates*, 574 U.S. at 566 (Kagan, J., dissenting) ("Lenity offers no proper refuge from [a] straightforward (even though capacious) construction."); *cf. United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied."). That is exactly the case here.

Although Defendant relies largely on *Yates* for his lenity argument, *Yates* provides little support for Defendant's position. In *Yates*, the Court was confronted with construing the meaning of "tangible object" in 18 U.S.C. § 1519, a statute similar in language and object to § 1512(c). *See, e.g.*, *Yates*, 574 U.S. at 541–43 (comparing the language of §§ 1512(c) and 1519). Regarding the rule of lenity, the Court briefly noted that if they had any doubts about the meaning of "tangible object" after having gone through the traditional canons of statutory interpretation, they would then invoke lenity to construe "tangible object" in a narrow way to

15

exclude Defendant's conduct.[7] *Id.* at 547–48. On the contrary, in the instant case, Defendant has not pointed to language in § 1512(c)(2) that, like "tangible object" in § 1519, is arguably ambiguous. Nor has defendant demonstrated that such ambiguity exists even after exhausting the traditional tools of statutory construction.

Defendant also argues that "there are other more definitive statutes available to charge [Defendant] for his alleged obstructive conduct." Def.'s Mot. at 52–53. That Defendant's conduct may also be criminalized under some other statute adds nothing to Defendant's rule of lenity argument and is itself neither surprising nor uncommon. *See, e.g.*, *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014); *see also Hubbard v. United States*, 514 U.S. 695, 715 n.14 (1995) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct.").

Because Defendant has not demonstrated any ambiguity in the language of § 1512(c)(2), let alone ambiguity remaining *after* exhaustion of the traditional tools and canons of statutory interpretation, Defendant's rule of lenity argument necessarily fails.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's [69] Amended Motion to Dismiss is **DENIED**. An appropriate order consistent with this decision accompanies this memorandum opinion.

Dated: February 9, 2022

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[7] It is unclear what role the rule of lenity played in *Yates* given that the Court phrased its lenity analysis as a hypothetical where ambiguity in the statutory language still existed even after applying the tools of statutory interpretation. *See Yates*, 574 U.S. at 547–48 ("Finally, *if* our recourse to traditional tools of statutory construction leaves any doubt about the meaning of 'tangible object,' . . . we *would* invoke the rule [of lenity] . . . .") (emphasis added). However, because the Court had already resolved the meaning of "tangible object" through application of the traditional interpretative canons, the rule of lenity discussion is not relevant to the holding.