IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br> Plaintiff,<br><br>v.<br><br>CHRISTOPHER RAY GRIDER.<br><br> Defendant. | Criminal Action No. 21-22 (CKK) |

**BRIEF IN SUPPORT OF
DEFENDANT'S NOTICE OF INTENT TO RAISE
PUBLIC AUTHORITY DEFENSE**

TO THE HONORABLE COLLEEN KOLLAR-KOTELLY, UNITED STATES DISTRICT COURT JUDGE FOR THE DISTRICT OF COLUMBIA:

 CHRISTOPHER RAY GRIDER, the Defendant in the above styled and numbered cause, by and through undersigned counsel, submits the following brief in support of his Notice of Intent to Raise Public Authority Defense on June 22, 2022, ECF Dkt. 102, as ordered by this Court by a Minute Order on June 23, 2022.

**I.  Introduction**

 Federal Rule of Criminal Procedure 12.3(a) requires a defendant to give notice to the attorney for the Government if they "intend[] to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense," and file a copy of said notice with the clerk. FED. R. CRIM. P. 12.3(a).

 A "public authority" defense "has been described as an affirmative defense where the defendant seeks exoneration based on the fact that he reasonably relied on

1

the authority of a government official to engage him in covert activity." *United States v. Achter*, 52 F.3d 753, 755 (8th Cir. 1995). "Entrapment by estoppel," on the other hand, applies "when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct." *Id*. (quoting *United States v. Smith*, 940 F.2d 710, 714 (1st Cir. 1991)).

Of these "defenses based on perceived government authority," Mr. Grider intends to raise the defense of entrapment by estoppel and is required to provide notice under Federal Rule 12.3, despite the distinction from the classic "public authority defense." *See United States v. Xiong*, 914 F.3d 1154, 1159 (8th Cir. 2019).

## II. Underlying Facts

For purposes of this brief, Mr. Grider will set out non-privileged information pertinent to this defense. Should this Court require additional evidence in advance of trial, more specifically, any of Mr. Grider's personal thoughts, private statements, and recollections related to the applicability of the defense, Mr. Grider will submit those in a separate filing after consideration of his request to submit those items under seal and *ex parte*.

Mr. Grider publicly stated his purpose in going to Washington, D.C. in his own words to a local media station from Waco, Texas shortly after departing the Capitol building on January 6: "The President asked people to come and show their support. I feel like it's the least we could do. That's kinda why I came from Central Texas all the way to D.C." *See* Exhibit B offered at Mr. Grider's Detention Hearing.[1]

---

[1] For ease, Mr. Grider has made a duplicate copy of Exhibit B offered and admitted at his Detention Hearing available here: https://app.box.com/s/6lhoocwynd1wjw4g4596u6mt5ug6u9oz.

Mr. Grider expects the evidence will show that he attended the rally organized and held by former President Donald J. Trump. As is commonly and publicly known, President Trump spoke at length to those in attendance about his claims of "voter fraud" and the need for those in attendance to demand government action to "stop the steal." *See* Transcript of Trump's speech at rally before US Capitol riot (available at https://apnews.com/article/election-2020-joe-biden-donald-trump-capitol-siege-media-e79eb5164613d6718e9f4502eb471f27). President Trump then directed those in attendance, including Mr. Grider, as follows:

- "After this, we're going to walk down and I'll be there with you. We're going to walk down. We're going to walk down any one you want, but I think right here. *We're going walk down to the Capitol, and we're going to cheer on our brave senators, and congressmen and women*. We're probably not going to be cheering so much for some of them because you'll never take back our country with weakness. *You have to show strength, and you have to be strong*.

- We have come to demand that Congress do the right thing and only count the electors who have been lawfully slated, lawfully slated. I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.

- So *we're going to, we're going to walk down Pennsylvania Avenue*, I love Pennsylvania Avenue, and we're going to the Capitol and we're going to try and give… The Democrats are hopeless. They're never voting for anything, not even one vote. But we're going to try and give our Republicans, the weak ones, because the strong ones don't need any of our help, *we're going to try and give them the kind of pride and boldness that they need to take back our country*.

- *So let's walk down Pennsylvania Avenue*. I want to thank you all. God bless you and God bless America. Thank you all for being here, this is incredible. Thank you very much. Thank you.

*Id*. Mr. Grider expects the evidence to show that, after President Trump concluded his speech, he relied on those statements to permit him to go to and enter the United States Capitol.

3

### III. Entrapment by Estoppel

In 1965, the Supreme Court held that the Due Process Clause of the United States Constitution prohibited convicting a person for demonstrating in a location where state officials "told him he could." *Cox v. Louisiana*, 379 U.S. 559, 571 (1965). In doing so, the Court relied on its previous holding in *Raley v. Ohio*, 360 U.S. 423 (1959). *Cox*, 379 at 571. In *Raley*, the Chairman of the 'Un-American Activities Commission' of the State of Ohio "who clearly appeared to be the agent of the State in a position to give such assurances, apprised three of the appellants that the privilege [to refuse answering questions of the Commission] in fact existed, and by his behavior toward the fourth obviously gave the same impression." *Raley*, 360 U.S. at 437. While the Court noted there was "no suggestion that the Commission had any intent to deceive the appellants" the Court held that "to sustain the judgment of the Ohio Supreme Court on such a basis after the Commission had acted as it did would be to sanction the most indefensible sort of entrapment by the State — convicting a citizen for exercising a privilege which the State clearly had told him was available to him." *Id.* at 438.

Both *Cox* and *Raley* involved a similar problem: "active misleading" from a person of apparent authority directing defendants to engage in conduct ultimately deemed by authorities to violate the law. *Id.* at 438–39 ("Here there were more than commands simply vague or even contradictory. There was active misleading . . . The State Supreme Court dismissed the statements of the Commission as legally erroneous, but the fact remains that at the inquiry they were *the voice of the State* most

4

presently speaking to the appellants); *Cox*, 379 U.S. at 571 ("the highest police officials of the city, in the presence of the Sheriff and Mayor, in effect told the demonstrators that they could meet where they did, 101 feet from the courthouse steps," but then had the demonstrators subsequently arrested for picketing near a courthouse).

Both of these cases are considered to be the origin of the affirmative defense of "entrapment by estoppel." Note, *The Immunity-Conferring Power of the Office of Legal Counsel*, 121 HARV. L. REV. 2086, 2093 (2008). As the Department of Justice has recognized, whereas with the defense of "public authority," "it is the defendant whose mistake leads to the commission of the crime; with entrapment by estoppel, 'a government official commits an error and, in reliance thereon, the defendant thereby violates the law.'" Criminal Resource Manual, CRM 2055, Department of Justice (available at https://www.justice.gov/archives/jm/criminal-resource-manual-2055-public-authority-defense) (citing *United States v. Burrows*, 36 F.3d 875, 882 (9th Cir. 1994); *United States v. Hedges*, 912 F.2d 1397, 1405 (11th Cir. 1990); *United States v. Clegg*, 846 F.2d 1221, 1222 (9th Cir. 1988); *United States v. Tallmadge*, 829 F.2d 767, 773-75 (9th Cir. 1987)); *see also Achter*, 52 F.3d at 755 (quoting *Smith*, 940 F.2d at 714) ("Entrapment by estoppel has been held to apply when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct."). "In short, the defense of entrapment by estoppel involves the 'concept of unintentional entrapment by an official who mistakenly misleads a person into a violation of the law.'" *Id.* (quoting *United States v. Brebner*, 951 F.2d 1017, 1025 (9th Cir.1991)).

This Court has previously relied on the Third Circuit's test for determining whether the entrapment by estoppel defense applies. *See United States v. Khanu*, 664 F. Supp. 2d 35, 41 (D.D.C. 2009) (quoting *United States v. W. Indies Transport, Inc.*, 127 F.3d 299, 313 (3d Cir. 1997)). Under that test, the defense applies where "the defendant establishes by a preponderance of the evidence that (1) a government official (2) told the defendant that certain criminal conduct was legal, (3) the defendant actually relied on the government official's statements, (4) and the defendant's reliance was in good faith and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement." *Id.*[2]

Although Judge Howell has, in *dicta*, questioned whether an entrapment by estoppel defense "applied generally to charged offenses arising out of the January 6, 2021 assault on the Capitol, . . .is likely to fail," as applied to the specific facts of Mr.

---

[2] As the Third Circuit recognized in *W. Indies Transport, Inc.*, "Since *Pennsylvania Chemical* was decided, other courts of appeals, citing the due process clause, have applied the entrapment by estoppel defense, although employing slightly different tests. *W. Indies Transp., Inc.*, 127 F.3d at 312–13 (3d Cir. 1997) (citing *United States v. Rector*, 111 F.3d 503, 506–07 (7th Cir. 1997) (entrapment by estoppel defense applies where "the one misleading the defendant be an official of the state; that he actively mislead the defendant; and that the defendant's reliance be actual and reasonable in light of the identity of the agent, the point of law represented, and the substance of the misrepresentation"; additionally, defendant's reliance must be in good faith); *United States v. Aquino–Chacon*, 109 F.3d 936, 938 (4th Cir. 1997) ("A criminal defendant may assert an entrapment-by-estoppel defense when the government affirmatively assures him that certain conduct is lawful, the defendant thereafter engages in the conduct in reasonable reliance on those assurances, and a criminal prosecution based upon the conduct ensues."); *United States v. Trevino-Martinez*, 86 F.3d 65, 69 (5th Cir.1996) ("criminal defendant may be entitled to raise a defense of entrapment by estoppel only when a government official or agent actively assures a defendant that certain conduct is legal and the defendant reasonably relies on that advice and continues or initiates the conduct") (internal quotations omitted); *Brebner*, 951 F.2d at 1024 (9th Cir.1991) ("The entrapment by estoppel defense applies when an authorized government official tells the defendant that certain conduct is legal and the defendant believes the official."); *Smith*, 940 F.2d at 714 (1st Cir.1991) ("Entrapment by estoppel has been held to apply when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct.")). Nevertheless, as the court recognized, "These courts agree that reasonable reliance means a defendant must establish that 'a person truly desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.'" *Id*. (quoting *Trevino–Martinez*, 86 F.3d at 69; *Brebner*, 951 F.2d at 1024).

Grider's case — a much different case factually than the one considered by Judge Howell — the defense is applicable to some (but not all) of the allegations against him. *See United States v. Chrestman*, 525 F. Supp. 3d 14, 28–29 (D.D.C. 2021) ("video footage clearly show[ed] [the] defendant in the front of the crowd, interfering with police barriers, confronting and threatening law enforcement, encouraging the crowd to 'take' the Capitol, and leading the mob and his co-conspirators in efforts to keep the metal barriers in the Capitol tunnels from closing, including by using his axe handle"; defendant there also a known member of the Proud Boys).

First, Mr. Grider has no intention of raising the defense relative to the allegation in Count Three of the superseding indictment alleging destruction of government property, nor the allegation in Count Eight alleging that he engaged in physical violence on Capitol grounds or buildings.[3] As to those charges, Mr. Grider intends to use the Government's own evidence to show that there is absolutely no evidence of him causing damage to any part of the United States Capitol Building, any evidence of him engaged in physical violence on Capitol grounds or buildings, nor any evidence of him *intending* to cause any damage to the Capitol building or engage in physical violence therein. To the contrary, he intends to offer evidence where he is heard shouting to others inside the Capitol <u>not</u> to break anything and attempting to help officers avoid further injury.

---

[3] He would also maintain his innocence to the allegation in Count Six of the superseding indictment should this Court deny his motion to dismiss that count. ECF Dkt. 101.

7

Where Mr. Grider intends to raise the entrapment by estoppel defense is regarding the allegations in Counts Seven and Nine, alleging disorderly conduct, parading, and demonstrating in a Capitol building and, as to the allegations in Counts One, Two, Four and Five, should this Court deny his motion to dismiss those counts presently pending before this Court. ECF Dkt. 101.

Like the protestors in *Cox* who were wrongly told by "the Chief of Police and other officials" to demonstrate at a specific location, Mr. Grider would show that the Commander in Chief of the United States wrongly told him (and thousands of others) that, together, they would march down to the Capitol building to "cheer on our brave senators, and congressmen and women," showing "strength," and to "give them the kind of pride and boldness they need to take back our country." *See Cox*, 379 U.S. at 571. Like the "highest police officials of the city" in *Cox*, by his words, tone, and action the President "in effect told the demonstrators [including Mr. Grider] that they could meet where they did." *See id.* This, in turn, created the effect of advising Mr. Grider and others that their actions were legal. *See Khanu*, 664 F. Supp. at 41. Mr. Grider, like many others who were there that day — but unlike the defendant in *Chrestman* with a preconceived plan to commit violence at the Capitol — ignorantly "relied on the government official's statements." *See id; cf. Chrestman*, 525 F. Supp. at 28–29. Finally, Mr. Grider would show that his "reliance" on those statements was "in good faith and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement." *Khanu*, 664 F. Supp. at 41.

8

To be clear, Mr. Grider does not presently maintain that anything President Trump did or said that day was legal or justifiable. As the recent hearings before Congress related to the events of January 6 have demonstrated, President Trump was, at a minimum, complicit in creating the situation that enabled what took place at the Capitol on January 6 to take place. While Judge Howell said generally that "January 6 defendants asserting the entrapment by estoppel defense could not argue that they were at all uncertain as to whether their conduct ran afoul of the criminal law, given the obvious police barricades, police lines, and police orders restricting entry at the Capitol," Mr. Grider's intends to show that he witnessed and experienced a much different and unique scenario. The evidence will show that, while he saw officers using pepper spray and rubber bullets to control others unlike him who were being aggressive, violent, and destructive, he entered the building through a door that was unoccupied by police and, unbeknownst to him, had been opened by other violent and destructive individuals. Then, once inside the Capitol, when he saw police lined up and restricting access to certain areas, he stood by and abided by their instructions.

To be further clear, Mr. Grider does not, as Judge Howell insinuated, presently believe President Trump's directives "waived the *entire* corpus of criminal law" and gave him "permission and privilege" to violate the law. *Chrestman*, 525 F. Supp. at 32 (emphasis added). Mr. Grider agrees with Judge Howell when she pointed out,

> No American President holds the power to sanction unlawful actions because this would make farce of the rule of law.
>
> ***

> [N]o President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters. Accepting that premise, even for the limited purpose of immunizing defendant and others similarly situated from criminal liability, would require this Court to accept that the President may prospectively shield whomever he pleases from prosecution simply by advising them that their conduct is lawful, in dereliction of his constitutional obligation to "take Care that the Laws be faithfully executed." That proposition is beyond the constitutional pale, and thus beyond the lawful powers of the President.

*Chrestman*, 525 F. Supp. at 32–33. However, the entrapment by estoppel defense is not meant to justify, ratify, or permit the government official's action. It is based on notion that, in simplest terms, one person should not be held to account for violating the law when a government agent gives that person permission to violate the law, even when that permission is unlawful or "misleading." *Raley*, 360 U.S. at 438–39. It is the action of "convicting a citizen for exercising a privilege which the State had clearly told him was available to him" that the "Due Process Clause does not permit." *Cox*, 379 U.S. at 571 (quoting *Raley*, 360 U.S. at 437).

The case *United States v. Barker* provides some guidance on this point. 546 F.2d 940 (D.C. Cir. 1976) (per curiam). That case involved E. Howard Hunt, working in conjunction with John Erlichman, G. Gordon Liddy, and others, and acting in his capacity working for the White House recruited the two defendants to illegally enter the office of a psychiatrist without a warrant to search for a file belonging to Daniel Ellsberg, the source of the Pentagon Papers leak. *Id.* at 943–44. While the court found it debatable whether Hunt had the legal authority to act as he did in his capacity working on behalf of the President, as Judge Wilkey noted, "that is not the issue here

for [the defendants]." *Id.* at 950. The issue, rather was "whether, given undisputed facts as known and represented to them, it was reasonable in 1971 for [the defendants] to act on the assumption that authority had been validly conferred on" Hunt. *Id.*; *see also id.* at 957 (Merhige, J., concurring). Because the trial court failed to submit that issue to the jury, the defendants' convictions were reversed, and the matter was remanded for a new trial. *Id.* at 954.

Here, instead of the edict coming from a presidential foot soldier like E. Howard Hunt, the commands that Mr. Grider heard came from the President of the United States himself. *See Khanu*, 664 F. Supp. at 41 (noting that reasonableness of the reliance is based on *inter alia* the identity of the government official making the statement) Whether the President had the legal authority to direct a massive protest at the Capitol is likewise not the issue. At a minimum, a juror could find it was reasonable for Mr. Grider to believe that President Trump's tone, words, and actions authorized Mr. Grider to parade on Capitol ground and engage in disorderly and disruptive conduct with the intent to impede, disrupt, and disturb an orderly session of Congress to accomplish that goal.

WHEREFORE, PREMISES CONSIDERED, Mr. Grider respectfully requests this Honorable Court permit him to submit his entrapment by estoppel defense to the jury in his case.

Date: <u>July 7, 2022</u>                                Respectfully Submitted,

**MAYR LAW, P.C.**

by: /s/ T. Brent Mayr
T. BRENT MAYR

>Texas State Bar Number 24037052
>D.C.D.C. Bar ID TX0206
>bmayr@mayr-law.com
>
>5300 Memorial Dr., Suite 750
>Houston, TX 77007
>Telephone: 713-808-9613
>Fax: 713-808-9991
>
>ATTORNEY FOR THE DEFENDANT,
>CHRISTOPHER RAY GRIDER

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this memorandum was sent to Counsel for the Government, Cindy Cho and Francesco Valentini, on July 7, 2022, via CM/ECF and email.

>/s/ T. Brent Mayr
>T. BRENT MAYR