UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER RAY GRIDER,<br><br>Defendant | Criminal Action No. 21-022 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(August 1, 2022)

This matter is before the Court on Defendant Christopher Ray Grider's ("Defendant" or "Grider") [102] Notice of Intent to Raise Public Authority Defense and his [108] Pretrial Memorandum ("Memorandum") in support thereof. Charged by indictment for his actions at the United States Capitol on January 6, 2021, Defendant maintains that he should be permitted to raise an "entrapment by estoppel" defense centered on former President Donald J. Trump's "Save America" address in advance of the insurrection. Because no such defense is available under Defendant's proffered facts, the Court shall not read an entrapment-by-estoppel instruction to the jury.

## I.   BACKGROUND

The Court here states only the factual background necessary to resolve the present issue. For a more detailed summary of the facts underlying this case, the Court refers the reader to its prior memorandum opinions. *United States v. Grider*, 2022 WL 392307 (D.D.C. Feb. 7, 2022); *United States v. Grider*, 2022 WL 3016775 (D.D.C. July 29, 2022). Briefly, the Court reiterates that Defendant is charged by indictment with: (1) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (2) Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2); (3) Destruction of Government Property, in violation of 18 U.S.C. § 1361;

1

(4) Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); (5) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation 18 U.S.C. § 1752(a)(2); (6) Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. §1752(a)(4); (7) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); (8) Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. §5104(e)(2)(F); and (9) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

Grider allegedly marched on the Capitol shortly after then President Trump's speech earlier that day.  *See* Aff. ¶ 10.  During that speech, former President Trump falsely claimed the 2020 Presidential Election had been "stolen" and urged then Vice President Michael R. Pence to "do the right thing" and delay the Joint Session of Congress from counting the electoral votes pursuant to the Twelfth Amendment and federal law.  *See Thompson v. Trump*, --- F. Supp. 3d ---, 2022 WL 503384, at *5 (D.D.C. Feb. 18, 2022) (APM); *see also* Associated Press, *Transcript of Trump's speech at rally before US Capitol riot* (Jan. 13, 2021) *available at* https://apnews.com/article/election-2020-joe-biden-donald-trump-capitol-siege-media-e79eb5164613d6718e9f4502eb471f27 (last accessed July 29, 2022) ("Speech Transcript").[1]  For the purposes of the present Memorandum, Grider argues that former President Trump made a number of a statements assuring attendees that obstructive protests after the speech at the United States Capitol would be lawful.

---

[1] Defendant requests the Court take judicial notice of this transcript.  As the transcript appears to be widely cited as authoritative, and the Government does not oppose this request, the Court shall, for present purposes, construe its contents as a source "whose accuracy cannot reasonably be questioned."  *See Murphy v. Iran*, 740 F. Supp. 2d 51, 58 (D.D.C. 2010) (discussing judicial notice).  That said, because the Court concludes that an entrapment-by-estoppel instruction defense is unavailable even taking Defendant's characterizations as true, the transcript's accuracy is largely beside the point.

Grider points to the following:

- After this, we're going to walk down and I'll be there with you. We're going to walk down. We're going to walk down any one you want, but I think right here. *We're going to walk down to the Capitol, and we're going to cheer on our brave senators, and congressmen and women.* We're probably not going to be cheering so much for some of them because you'll never take back our country with weakness. *You have to show strength, you have to be strong.*

- We have come to demand that Congress do the right thing and only count the electors who have lawfully slated, lawfully slated. I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.

- So *we're going to, we're going to walk down Pennsylvania Avenue*, I love Pennsylvania Avenue, and we're going to the Capitol, and we're going to try and give… The Democrats are hopeless. They're never voting for anything, not even one vote, But we're going to try and give our Republicans, the weak ones, because the strong ones don't need any of our help, *we're going to try and give them the kind of boldness that they need to take back our country.*

- *So let's walk down Pennsylvania Avenue.* I want to thank you all. God bless you and God bless American. Thank you all for being here, this is incredible. Thank you very much. Thank you.

ECF No. 108 at 3 (emphasis original) (quoting Speech Transcript). Grider argues that he appropriately relied on these statements in good faith to believe that his presence and actions at the Capitol (with the exception of alleged destruction of property) were lawful. *See id.* at 7.

## II.     DISCUSSION

The defense of entrapment by estoppel arises from the Fifth Amendment's Due Process Clause. As the Supreme Court has explained, "'convicting a citizen for exercising a privilege which the State had clearly told him was available to him'" violates fundamental principles of fairness inherent in the rule of law. *See Cox v. Louisiana*, 379 U.S. 559, 571 (1965) (quoting *Raley v. Ohio*, 360 U.S. 423, 426 (1959)). Where a state official "affirmatively misled" a defendant as to an action's legality, an entrapment-by-estoppel defense may be available when the prosecution of the culpable conduct "offends some principle of justice so rooted in the traditional and

3

conscience of our people as to be ranked as fundamental." *Patterson v. New York*, 432 U.S. 197, 202 (1977) (cleaned up).  "'[T]o win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.'" *United States v. Chrestmann*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (brackets altered) (quoting *Cox*, 806 F.3d at 1191) (rejecting same entrapment-by-estoppel defense on other grounds on motion for pretrial release from custody).

In *Chrestmann*, Chief Judge Beryl A. Howell focused on whether the defendant's reliance on former President Trump's statements was reasonable.  *Compare id.* at 31-33 *with* ECF No. 108 at 10.  On the Court's reading, that puts the cart before the horse.  Regardless of whether Defendant can satisfy the fourth prong, reliance, he certainly cannot satisfy the first prong, that President Trump "actively misled him about the state of the law."  As such, the Court shall not reach whether it is a defense to rely on a senior government official's demonstrably wrong reading of the law. *See Chrestmann*, 525 F. Supp. 3d at 32-33.

In *Cox* and its progeny, the "affirmatively misleading" statement clearly spoke to whether the action is lawful.  In *Cox*, for example, the "highest police officials of the city" had "affirmatively told" protestors that picketing in a particular area was lawful by "grant[ing]" "permission" to do so.  379 U.S. at 570; *see also United States v. Pa. Indus. Chem. Corp.*, 411 U.S. 655, 670 (1973) (permitting entrapment-by-estoppel defense where defendant corporation relied on "longstanding, official administrative construction" of a certain legal term).  Federal

Courts of Appeals have concluded from this Supreme Court precedent that, for an entrapment-by-estoppel defense to be available, a "government official or agent [must have] actively assured a defendant that certain conduct is legal." *E.g.*, *United States v. Spires*, 79 F.3d 464, 466 (5th Cir. 1996); *Garcia v. Does*, 779 F.3d 84, 95 (2d Cir. 2015) (rejecting entrapment-by-estoppel defense advanced by protestors in New York City where there was no "express statement from any policy official authorizing the protestors[']" conduct or "opining that doing so would be lawful"). As Chief Judge Howell has explained, "[e]ach of [these] case[s] involved either a misunderstanding of the controlling law or an effort by a government actor to answer to complex or ambiguous legal questions defining the scope of prohibited conduct under a given statute." *United States v. Chrestmann*, 525 F. Supp. 3d at 32.

Here, former President Trump's statements did not in any way address the *legality* of the actions he urged his supporters to take. He did not, for example, assure them that marching along Pennsylvania was "lawful" or that occupying Capitol grounds was "permissible." In this regard, consider *Meyers v. City of New York*, No. 1:14-cv-09142 (ALC), 2019 WL 1397186, at *12 (S.D.N.Y. Mar. 28, 2019). In that case, the mayor of New York City temporarily forwent enforcing trespass laws against protestors occupying Zuccotti Park in Manhattan. *Id.* After the New York City Police Department evicted the protestors and charged them criminally, the protestors insisted that they, like the *Cox* protestors, had relied on the mayor's statement that "we'll allow [the protestors] to express themselves" "as long as [they] obey the laws." *Id.* at *1 (cleaned up). That statement, however, did not form a basis for an entrapment-by-estoppel defense because it "did not advise [the protestors] that the behavior for which they were [prosecuted] was *lawful*." *See id.* at *17 (emphasis added).

In this regard, *United States v. Washington*, 887 F. Supp. 2d 1077 (D. Mont. 2012) is also

5

instructive. There, owners and operators of a medical marijuana dispensary, operating lawfully under state law, sought to raise an entrapment-by-estoppel defense predicated on former President Obama's statements, while a candidate for President, that he would forgo enforcing federal marijuana laws in certain circumstances. *Id.* at 1096-97. Such a challenge about enforcement priorities could not sustain that defense because the defendants "point[ed] to no incident where a government official affirmatively stated or strongly implied that distribution of medical marijuana [wa]s lawful" federally. *Id.* at 1097. So too here. Grider has identified no statement by former President Trump—or any other government official—assuring him that obstructive trespass on Capitol grounds was lawful.

The Court does not reach whether Defendant relied in good faith on any purported unlawful instruction by former President Trump. That said, briefly assuming *arguendo* that former President Trump *did* direct Grider and others to break into the Capitol to obstruct Congressional proceedings, it is obvious that the President cannot "waive statutory law" and "sanction conduct that strikes at the very heart of the Constitution" in order to "immunize from criminal liability those who seek to destabilize or even topple the constitutional order." *See Chrestmann*, 525 F. Supp. 3d at 33; *see also United States v. North*, 910 F.2d 843, 849 (D.C. Cir. 1990) (holding that following unlawful Presidential orders is not a "complete defense" to criminal liability) *opinion withdrawn and superseded in irrelevant part on reh'g* 920 F.2d 940 (D.C. Cir. 1990). However, regardless of whether former President Trump did issue such instructions, because former President Trump never assured Grider that such conduct was *lawful*, the Court offers no opinion on the content or meaning of then President Trump's public comments on January 6, 2021.

In sum, the Court shall not instruct the jury on a defense of entrapment by estoppel. However, the Court does not reach whether former President Trump's statements are inadmissible

for *all* purposes. *See* Order at 2, ECF No. 39, *United States v. Thompson*, Crim. A. No. 21-161-1 (RBW) (D.D.C. Mar. 23, 2022) (excluding evidence of former President Trump's statements for all purposes as unduly prejudicial under Federal Rule of Evidence 403). Per the Court's [100] Pretrial Scheduling Order, motions *in limine* are due October 28, 2022. If the parties foresee this issue arising at trial, the parties must brief the question in their motions *in limine*.

### III.   CONCLUSION

For the foregoing reasons, the Court shall not instruct the jury on an entrapment-by-estoppel defense.

**SO ORDERED.**

Dated: August 1, 2022

                                                            /s/
                                              COLLEEN KOLLAR-KOTELLY
                                              United States District Judge