*LEAVE TO FILE GRANTED*

*Judge Kollar-Kotelly*
*Dec 2, 2022*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CHRISTOPHER RAY GRIDER,**<br><br>Defendant. | Case No. 21-cr-22-CKK |

## GRAY MEDIA GROUP, INC.'S MOTION TO QUASH AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Charles D. Tobin (D.C. Bar No. 256308)
Maxwell S. Mishkin (D.C. Bar No. 1031356)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington D.C. 20006-1157
Telephone: (202) 661-2200
Facsimile: (202) 661-229
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

*Attorneys for Movant Gray Media Group, Inc.*

Gray Media Group, Inc. ("Gray"), by and through undersigned counsel, respectfully moves to quash a criminal trial subpoena served on one of its journalists for her testimony and newsgathering materials. In support of this motion, Gray states as follows:

## INTRODUCTION

Defendant Christopher Ray Grider has subpoenaed Rissa Shaw – a journalist for KWTX-TV, a Waco, Texas-based television station owned and operated by Gray – to testify at the upcoming trial in this case and produce unpublished "notes or records" that Gray obtained or created through newsgathering activities. Defendant's subpoena should be quashed both because it seeks discovery beyond the scope of Rule 17(c) of the Federal Rules of Criminal Procedure and because the testimony and material it seeks are protected from compelled disclosure by the First Amendment to the U.S. Constitution and federal common law. *See United States v. Fitzsimons*, 342 F.R.D. 18 (D.D.C. 2022) (quashing Capitol riot defendant's trial subpoena to CNN for unpublished newsgathering materials under Rule 17).

## BACKGROUND

### A. Defendant's Alleged Conduct On January 6, 2021

Defendant faces a nine-count indictment arising from his actions at the U.S. Capitol on January 6, 2021. *See generally* July 29, 2022 Mem. Op. at 1-2 (ECF No. 114). The Government alleges that Defendant "made his way to the Capitol and entered the building with the crowd"; that he "continued all the way to the doors of the Speaker's Lobby, an area directly outside of and with access to the Floor of the United States House of Representatives"; that "photos show [Defendant] at the very front of the mob, 'attempt[ing] to push open the doors and then kick the doors in an attempt to breach the entrance leading to the House Chamber'"; that Defendant "handed a black helmet to another rioter to assist the rioter in breaking open the windows on the

doors"; and that "another rioter standing next to [Defendant] jumped through the broken window" and was "shot by a Capitol Police officer guarding Members of Congress." *Id.* at 4.

According to the affidavit in support of the Government's Criminal Complaint, "video shows [Defendant] directly in front of the glass doors leading to the Speaker's Lobby," where he can be seen "handing a black helmet" to an individual who was "attempting to break the glass window separating the mob from the House chambers." *See* Aff. in Supp. of Crim. Compl. at 7 (ECF No. 1-1).[1] Video also shows that the other individual "accepted the helmet and proceeded to use it in order to strike the glass doors (in the center and far-right hand side), breaking the glass that [rioter Ashli Babbitt] eventually attempted to jump through," and that Defendant himself "attempted to push open the doors and then kick the doors in an attempt to breach the entrance leading to House Chamber where members of Congress were located." *Id.* at 8.

**B.     Gray's Interview of Defendant**

As the Government's affidavit also notes, "[o]n the evening of January 6, 2021, a story aired on KWTX-TV News 10, a local news media station located in Waco, Texas, that featured Grider on one of their segments." *Id.* at 4. The roughly two-and-a-half minute telecast segment was embedded into a web article the same day and remains available online. *See* Rissa Shaw, *Central Texas man witnessed deadly shooting as Trump supporters stormed US Capitol*, KWTX-TV (Jan. 6, 2021), https://www.kwtx.com/2021/01/07/central-texas-man-witnessed-deadly-shooting-as-trump-supporters-stormed-us-capitol/. During the telecast, Defendant explained that "[t]he President asked people to come and show their support, I feel like it's the least that we could do, it's kind of why I came from Central Texas and went all the way to D.C." *Id.*

---

[1] The U.S. Department of Justice also posted the Affidavit at https://www.justice.gov/opa/page/file/1358246/download.

Defendant also described how he witnessed Ms. Babbitt's shooting and subsequently "panicked" but "couldn't leave because there were thousands of people behind us pushing us forward." *Id.*

## C. The January 27, 2021 Detention Hearing

Defendant was arrested in Texas on January 21, 2021. *See* ECF No. 5 at 1. The following day, Magistrate Judge Susan Hightower of the U.S. District Court for the Western District of Texas ordered Defendant to be temporarily detained pending a hearing to be held on January 27, 2021. *See id.* at 16-17. Magistrate Judge Hightower held the hearing as scheduled on January 27, at which Defendant introduced the KWTX telecast as evidence. *See* Decl. of Charles D. Tobin ("Tobin Decl."), Ex. B. (Jan. 27, 2021 Hr'g Tr.) at 12-13. Defense counsel also proffered testimony from Ms. Shaw, who attended the hearing virtually, as to her impressions of Defendant's state of mind during the interview, her prior reporting about Defendant as a small-business owner in Waco, and her belief that Defendant does not pose "a danger to the community in any way." *See id.* at 14-16. Ms. Shaw did not testify at the hearing. At the conclusion of the hearing, Magistrate Judge Hightower ruled from the bench that the Government had met its burden to justify detaining Defendant prior to trial. *See id.* at 24-26.[2]

## D. Defendant's Subpoena

On November 21, 2022, just three weeks before the scheduled December 12 bench trial in this case, Defendant purported to serve, via email, a subpoena for trial testimony and documents on Ms. Shaw. *See* Tobin Decl., Ex. A. The subpoena demands that Ms. Shaw appear before this Court on December 12 and produce "[a]ny notes or records related to [her] interview of Christopher Grider on January 6, 2021[.]" *Id.*

---

[2] After the case was transferred to this District, then-District Court Judge Ketanji Brown Jackson ultimately ordered Defendant to be released from pretrial detention. ECF No. 15.

3

By telephone conference on November 21, 2022, the undersigned counsel for Gray conferred with defense counsel who issued the subpoena. Tobin Decl. ¶ 3. Gray's counsel noted its policy of objecting to the compelled testimony of its journalists or the disclosure of its unpublished newsgathering materials. *Id.* Defense counsel informed the undersigned that he intended to elicit testimony from Ms. Shaw about her interactions with Defendant, specifically (1) what Defendant said to her, and (2) her impressions of Defendant's mental state at the time of the interview. *Id.*

Following consideration, Gray notified Defendant through counsel on November 22, 2022 that it would bring this motion to quash if Defendant did not withdraw the subpoena voluntarily. *Id.* ¶ 4. On November 23, 2022, defense counsel notified Gray's counsel that Defendant would not be withdrawing the subpoena. *Id.* ¶ 5. That same day, Gray's counsel conferred with Government counsel, who expressed that the Government does not consider Ms. Shaw a necessary witness in this case and does not intend to take a position on a motion to quash the trial subpoena at issue. *Id.* ¶ 6. This motion followed.

## ARGUMENT

**I.     The Court Should Grant Gray's Motion Under Rule 17 Because Compelling Testimony and Production of Newsgathering Materials is Unreasonable Here**

Before even reaching the issue of the journalist's privilege under the First Amendment and the common law, this Court should grant the motion to quash under the Federal Rules of Criminal Procedure, just as another Court in this District recently did in the *Fitzsimons* case. *Fitzsimons*, 342 F.R.D. at 20-21 & n.3 (quashing Capitol riot defendant's trial subpoena to CNN for unpublished newsgathering materials under Rule 17, and noting that the court thus "need not resolve" the asserted "First Amendment interest in protecting newsgathering activities and

4

preventing chill of journalistic reporting on events of public interest"). The material Defendant seeks here is not relevant, material, and necessary, as required under the Rule.

As the Supreme Court explained in *United States v. Nixon*, 418 U.S. 683 (1974), a Rule 17(c) document subpoena is "not intended to provide a means of discovery for criminal cases." *Id.* at 698 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)). Rather, "Rule 17(c) may be used to obtain only evidentiary materials." *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995); *see also Bowman*, 341 U.S. at 219 (same). Courts thus recognize a fundamental distinction between:

> exculpatory material in the possession of the prosecution, generally available [to a criminal defendant] under the teachings of *Brady v. Maryland*, and exculpatory *evidence* in the possession of third parties. Only the latter is retrievable under a rule 17(c) subpoena; naked exculpatory material held by third parties that does not rise to the dignity of admissible evidence simply is not within the rule.

*United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) (emphasis added). Under Rule 17(c), therefore, a party seeking discovery must show that the documents sought "are evidentiary and relevant" and that the subpoena "is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699-700 (citing *Iozia*, 13 F.R.D. at 338); *see also Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 386-87 (2004) (noting that "the party requesting the information" bears the burden of showing that it has satisfied these "exacting standards"). In this way, "Rule 17(c) precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted or where the claim that subpoenaed materials will contain such evidence represents mere speculation." *In re Sealed Case*, 121 F.3d 729, 754-55 (D.C. Cir. 1997).

Rule 17 provides that "the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). A district court should grant a motion to quash a subpoena issued pursuant to Rule 17(c) in the absence of a showing that the

subpoena satisfies the applicable "standards of relevance, materiality and necessity." *United States v. North*, 708 F. Supp. 402, 404 (D.D.C. 1989); *see also United States v. Haldeman*, 559 F.2d 31, 75 (D.C. Cir. 1976) ("Rule 17(c), which is not a discovery device, confines a subpoena duces tecum to admissible evidence, authorizes the quashing of the subpoena if it is 'unreasonable or oppressive' and indulges pretrial inspection of subpoenaed papers only upon a showing" that satisfies the *Nixon* test (footnotes omitted)).

Applying these standards, another Court in this District recently quashed a Capitol riot defendant's subpoena to CNN for unpublished newsgathering materials pursuant to Rule 17. There, defendant Kyle Fitzsimons sought from CNN unpublished footage of an interview with a Capitol Police officer who was expected to be "a key witness for the Government." *Fitzsimons*, 342 F.R.D. at 22. CNN moved to quash under both Rule 17 and the reporter's privilege, and the Court concluded that defendant failed to satisfy the exacting standards of Rule 17 and quashed the subpoena accordingly. As the Court explained, "[t]he relevance prong is not satisfied merely because a defendant can articulate what they hope to find in the subpoenaed evidence," but rather a defendant "must show a *reasonable likelihood* that the [subpoenaed materials] contain relevant evidence." *Id.* at 21 (emphasis added). The Court thus concluded that defendant could not demonstrate relevance with only speculation about what the unpublished materials *might* contain. *Id.* The Court then noted that a defendant must "show with a reasonable probability that the [subpoenaed materials] are relevant *and admissible*," and explained that defendant could not demand information that would be inadmissible hearsay without demonstrating "a reasonable likelihood" that some intervening event would ultimately make that information admissible at trial. *Id.* at 22. Because defendant thus failed to show the subpoenaed material was relevant and admissible, Rule 17 alone obliged the Court to quash the subpoena. The Court therefore did not

reach CNN's separate and independent argument for quashing the subpoena based on "the First Amendment interest in protecting newsgathering activities and preventing chill of journalistic reporting on events of public interest." *Id.* at 21-23 & n.3.

Here, it is likewise clear that the subpoena cannot satisfy Rule 17(c). As noted above, the events of January 6, 2021—and more specifically of Defendant's actions—are captured on video, which by itself forms a significant part of the evidentiary basis for the charges in this case. Defendant has no reason to believe that a journalist's testimony about their long-distance communication—made *after* all of the conduct in Washington for which he is charged—or unpublished newsgathering materials related to those communications could possibly be exculpatory. Rather, based on the meet-and-confer between defense counsel and Gray's counsel, Defendant hopes to elicit from Ms. Shaw testimony as to (a) her own subjective impressions of Defendant's state-of-mind at the time of the interview for the KWTX telecast; or (b) what Defendant told Ms. Shaw during the course of that interview. Tobin Decl. ¶ 3; *see also* Def.'s Mot. to Permit Witnesses to Appear by Videoconference at 2 (ECF No. 134) (stating that Ms. Shaw "will testify as to [Defendant's] then-present state of mind, as well as providing details regarding her contact with [Defendant]"). But testimony about Defendant's state of mind is *inadmissible* under Rule 701 of the Federal Rules of Evidence when offered by a lay witness such as Ms. Shaw. *See, e.g., United States v. Brown*, 938 F.2d 1482, 1488 (1st Cir. 1991) ("Testimony regarding the inchoate state of mind of a defendant does not fall within the category of allowable opinion testimony by lay witnesses." (citing Rule 701)). And *unless Defendant waives his Fifth Amendment privilege* and subjects himself to cross-examination at trial, which he has not agreed to do, *see* Tobin Decl. ¶ 3, his prior out-of-court statements to Ms. Shaw are *inadmissible hearsay*. As the Court of Appeals of Virginia put it:

7

> [A]llowing a defendant to control the admissibility of his prior statement by invoking his Fifth Amendment right not to testify, thereby rendering himself unavailable, would eviscerate the hearsay rule's unavailability requirement. Such a defendant would be able to have his alleged prior statement admitted into evidence for the truth of its content while simultaneously insulating himself from cross-examination about it. We will not interpret the hearsay rule to allow a defendant to invoke his Fifth Amendment right not to testify as a shield to protect and insulate him against cross-examination only to simultaneously employ that right as a sword to obtain the admission of his alleged extrajudicial prior self-serving hearsay statements.

*Bailey v. Virginia*, 749 S.E.2d 544, 548 (Va. App. Ct. 2013); *see also People v. Sibadan*, 240 A.D.2d 30, 38 (N.Y. App. Div. 1998) ("a criminal defendant may not create his unavailability by invoking his privilege against self-incrimination, and then seek to benefit therefrom by introducing his own prior hearsay statements not subject to cross-examination" (collecting cases)). Defendant thus cannot satisfy the "standards of relevance, materiality and necessity" as to this subpoena, and it should be quashed accordingly. *North*, 708 F. Supp. at 404.[3]

In addition, as the Supreme Court has held in evaluating Rule 17 subpoenas, "what is reasonable depends on the context." *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991). Here the subpoena seeks a journalist's testimony and unpublished materials. The strong federal policy against such an intrusion into the newsgathering process is expressed not only in the evidentiary privileges recognized around the country, *see infra* Part II, but also in the U.S. Department of Justice Guidelines, which serve to "safeguard[] the essential role of a free press in fostering Government accountability and an open society." 28 C.F.R. § 50.10(a)(3). In fact, the

---

[3] *See also, e.g., See United States v. Schneider*, 2003 U.S. Dist. LEXIS 27324, at *18-21 (N.D. Cal. Nov. 18, 2003) (quashing subpoena to news organization as "unreasonable" and "cumulative" where it sought potentially contradictory or illuminating statements by defendant, despite ample other interviews and statements in party's possession); *United States v. Carriles*, 263 F.R.D. 400, 405-06 (W.D. Tex. 2009) (same, where criminal defendant failed to establish news materials were sufficiently relevant and admissible); *United States v. Rosenschein*, 2020 U.S. Dist. LEXIS 127220, at *14 (D.N.M. July 20, 2020) (same).

Department of Justice strengthened those guidelines just this year, and they now codify that the Department "will no longer use compulsory legal process for the purpose of obtaining information from or records of members of the news media acting within the scope of news gathering, except in limited circumstances."[4] Moreover, that bar extends to the full range of compulsory process and applies "regardless of whether issued to members of the news media directly, to their publishers or employers, or to others, including third-party service providers of any of the forgoing, for the purpose of obtaining information from or records of members of the news media, and regardless of whether the compulsory legal process seeks testimony, physical or electronic documents, telephone toll or other communications records, metadata, or digital content." 28 C.F.R. § 50.10(b)(2)(i).

Here, allowing speculative discovery of inadmissible and irrelevant testimony from the press would expose a host of media organizations to similar speculative subpoenas in similar January 6 prosecutions. That would undeniably chill news reporting about this topic of clear national importance—the "violent breach of the Capitol" that "was a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). Indeed, it would chill reporting on what Chief Judge Howell has deemed "the extraordinary public interest surrounding the events that took place at the U.S. Capitol on January 6, which prompted the Press Coalition to pursue a court-wide Standing Order governing release of [judicial records] in cases arising from those events, and this Court to enter a standing order governing release of such [records]." *United States v. Torrens*, 560 F. Supp. 3d 283, 292-93 (D.D.C. 2021) (Howell,

---

[4] *See New Regulations Regarding Obtaining Info. From Or Records Of Members Of The News Media; And Regarding Questioning, Arresting, Or Charging Members Of The News Media*, Dep't of Justice (Oct. 26, 2022), https://www.justice.gov/ag/page/file/1547041/download.

C.J.).[5] In this context, the unreasonable burden on Gray, and on the media generally, also weighs in favor of quashing the subpoena under Rule 17(c).

## II. The Court Should Also Quash the Subpoena Under the First Amendment and Common Law Reporter's Privilege

In addition to being unreasonable under Rule 17, the subpoena also seeks testimony and materials subject to a qualified reporter's privilege. The D.C. Circuit has made it clear that, absent extraordinary circumstances, news organizations cannot be compelled to disclose information created in the course of his newsgathering. No such circumstances are present here.

### 1. A Qualified Reporter's Privilege Applies In This Case

Although there is not yet a federal shield law for journalists,[6] despite the existence of such statutory protections in most states – including Texas, where Ms. Shaw works as a journalist for Gray[7] – a number of federal Circuits, including the D.C. Circuit, recognize a reporter's privilege based on either the First Amendment or common law. *See, e.g.*, *Shoen v. Shoen*, 5 F.3d 1289, 1292 & n.5 (9th Cir. 1993) (surveying cases and noting that the First,

---

[5] *See also, e.g., In re Press & Pub. Access to Video Exhibits in Capitol Riot Cases*, 2021 U.S. Dist. LEXIS 92101, at *13 (D.D.C. May 14, 2021) (Howell, C.J.) (issuing the Standing Order for press access and noting that "the events at the U.S. Capitol on January 6, 2021, generally, and the Capitol Cases in particular, have already been the subject of extraordinary attention both nationally and even globally").

[6] The latest proposed federal reporter's shield law, the "PRESS Act," passed in the U.S. House of Representatives by voice vote in September 2022 and currently awaits a vote in the U.S. Senate. *See H.R. 4330 - PRESS Act*, https://www.congress.gov/bill/117th-congress/house-bill/4330.

[7] Texas affords reporters and news organizations substantial protection against the compelled disclosure of "any confidential or nonconfidential unpublished information, document, or item obtained or prepared while acting as a journalist." Tex. Code Crim. Proc. Ann. art. 38.11. As of 2021, "40 states and the District of Columbia have enacted statutes, known as 'shield laws,' that give journalists some form of privilege against compelled production of confidential or unpublished information." *Intro. to the Reporter's Privilege Compendium*, Reporters Comm. for Freedom of the Press, https://www.rcfp.org/introduction-to-the-reporters-privilege-compendium/.

10

Second, Third, Fourth, Fifth, Eighth, Tenth, and D.C. Circuits have recognized a privilege for journalists). The D.C. Circuit has applied the qualified privilege in both civil and criminal cases. *United States v. Ahn*, 231 F.3d 26, 36-37 (D.C. Cir. 2000) (criminal case); *Zerilli v. Smith*, 656 F.2d 705, 713-15 (D.C. Cir. 1981) (civil action).[8] At least five other Circuits have similarly recognized a qualified privilege in criminal cases.[9]

Most relevant here, in *Ahn* a criminal defendant "sought to subpoena" several television reporters whose stations had "broadcast reports detailing [his] arrest." 231 F.3d at 35-37. The journalists "filed a motion to quash arguing that reporters possess a qualified privilege not to disclose confidential sources," and the District Court granted that motion, finding "that the reporters' testimony was not 'essential and crucial' to [defendant's] case and was not relevant to determining [his] guilt or innocence," and concluding that defendant "had not demonstrated that the reporters' qualified privilege should be overcome." *Id.* The D.C. Circuit affirmed that ruling

---

[8] The D.C. Circuit has rejected the existence of the constitutional privilege only in the context of federal grand jury investigations. *See In re Grand Jury Subpoena, Judith Miller*, 397 F.3d 964, 970 (D.C. Cir. 2005) (citing *Branzburg v. Hayes*, 408 U.S. 665 (1972)). Yet, even in that context, some protections remain. *Branzburg*, 408 U.S. at 709 (Powell, J., concurring) ("Certainly, we do not hold . . . that state and federal authorities are free to annex the news media as an investigative arm of the government" (internal marks omitted)).

[9] *See, e.g., United States v. LaRouche Campaign*, 841 F.2d 1176, 1181 (1st Cir. 1988) ("disclosure of such confidential material would clearly jeopardize the ability of journalists and the media to gather information and, therefore, have a chilling effect on speech"); *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986) ("information may only be compelled from a reporter claiming privilege if the party requesting the information can show that it is highly relevant, necessary to the proper presentation of the case, and unavailable from other sources"); *United States v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983) ("We see no legally-principled reason for drawing a distinction between civil and criminal cases when considering whether the reporter's interest in confidentiality should yield to the moving party's need for probative evidence."); *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980) ("the interests of the press that form the foundation for the privilege are not diminished because the nature of the underlying proceeding out of which the request for the information arises is a criminal trial"); *Farr v. Pitchess*, 522 F.2d 464, 467-69 (9th Cir. 1975) (recognizing First Amendment rights but finding them outweighed in facts of case).

11

under an abuse-of-discretion standard, after finding that the plaintiff failed to establish a claim. *Id.*; *see also United States v. Whitmore*, No. CR02-269 (RJL), 2002 BL 1666, at *11 (D.D.C. Oct. 31, 2002) (quashing subpoena to journalist on alternative grounds but noting that "there are very strong arguments" that subpoena sought testimony in violation of the "qualified privilege for a journalist"), *aff'd in relevant part*, 359 F.3d 609 (D.C. Cir. 2004).

Concurring in *Miller*, Judge Tatel wrote that the D.C. Circuit has continued to "find[] constitutional protections for reporters" and expressly noted that, in *Ahn*, the court "affirmed the denial of a criminal defense subpoena on grounds that the defendant 'failed to carry his burden' of 'demonstrating that the reporters' qualified privilege should be overcome.'" 397 F.3d at 987-88 (Tatel, J., concurring). In addition, despite the skepticism expressed in *United States v. Libby*,[10] other courts have continued to read *Ahn* as recognizing a reporter's privilege in criminal cases. *See, e.g., United States v. Wuterich*, 68 M.J. 511, 521 (N-M. Ct. Crim. App. 2009) (citing *Ahn* for the proposition that "the District of Columbia Circuit ha[s] also applied the reporter's privilege in the criminal context" for "cases involving confidential material").

*Ahn* remains binding in this Circuit and is in line with nearly a half-dozen other Circuits. In addition, the reporter's privilege emerges not just from the First Amendment but also the common law, and as a result, from Federal Rule of Evidence 501. Although the D.C. Circuit did not reach that question in *Miller*, Judge Tatel would have held that the common law provides such protection, even in the grand jury context, and Judge Henderson indicated that she might

---

[10] 432 F. Supp. 2d 26, 45-46 (D.D.C. 2006). While Judge Walton in *Libby* rejected the reporter's privilege, and questioned the extent of the *Ahn* holding in that decision, he nevertheless acknowledged that a subsequent D.C. Circuit concurrence "could arguably lead to the inference that *Ahn* stands for the proposition that a balancing test must be employed in criminal cases at the trial stage." *Id.* at 45 n.23. Moreover, as the decision of a different Court in this District, *Libby* "is not binding" on this Court. *Am. Council of the Blind v. WMATA*, 133 F. Supp. 2d 66, 74 n.2 (D.D.C. 2001).

have agreed if the issue were squarely before the court. 397 F.3d at 986-995 (Tatel, J., concurring in judgment); *id.* at 983 (Henderson, J., concurring). *Compare also Cuthbertson*, 630 F.2d at 146-47 (recognizing common law protection in criminal case), *with Lee v. Dep't of Justice*, 401 F. Supp. 2d 123, 139 (D.D.C. 2005) (declining to recognize common law protection in civil case).[11]

2. The Privilege Has Not Been Waived

During the meet-and-confer process, defense counsel suggested that his proffering of Ms. Shaw's potential testimony at the January 27, 2021 detention hearing had effected a waiver of the reporter's privilege. *See* Tobin Decl. ¶ 5. To the extent Defendant intends to make that argument in response to this motion, the Court should reject it for two independent reasons.

First, Gray has its own privilege to assert under the First Amendment and common law, as Defendant is seeking Ms. Shaw's testimony based on information she learned in the course of her work as a KWTX journalist. *See New York Times Co. v. Gonzales*, 382 F. Supp. 2d 457, 475 (S.D.N.Y. 2005) ("It is well established that '[a] privilege may be invoked by a news gathering agency, *in addition to* a person engaging in news gathering dissemination.'" (emphasis added)), *vacated on other grounds*, 459 F.3d 160, 163 (2d Cir. 2006) (concluding that the privilege could be overcome as a matter of law on the facts before the court); *accord In re Williams*, 766 F. Supp. 358, 369 n.12 (W.D. Pa. 1991) (citing *Cuthbertson*, 630 F.2d 139 (noting that "[a] privilege may be invoked by a news gathering agency, in addition to a person engaging in news gathering dissemination" and holding CBS held the privilege), *aff'd*, 963 F.2d 567 (3d Cir.

---

[11] The arguments supporting recognition of such protection grounded in the common law and Rule 501 are set forth in significant detail in Judge Tatel's separate opinion in *Miller*, 397 F.3d at 997-1003. This reasoning has become even more persuasive in light of recently strengthened Justice Department regulations against service of compulsory process on journalists.

13

1992); *Gulliver's Periodicals v. Chas. Levy Circulating Co.*, 455 F. Supp. 1197, 1199 (N.D. Ill. 1978) ("[a] publisher and [its] reporters are protected by the [F]irst [A]mendment . . . from revealing the sources and source material on which they relied in writing and publishing [an] article"); *Stickels v. Gen. Rental Co.*, 750 F. Supp. 729, 730-31 (E.D. Va. 1990) (court adjudicated motion to quash a subpoena brought by a newspaper even though photos sought by subpoena were taken by a reporter for the newspaper). Gray can thus continue to assert the privilege here.

Second, the potential testimony of Ms. Shaw that defense counsel proffered at the detention hearing did not reveal any privileged newsgathering information or material and thus could not have effected a waiver of that privilege even if it were solely her privilege to waive. As the transcript reflects, defense counsel did not proffer Ms. Shaw's testimony as to what Defendant communicated to her in any unpublished materials, or what if any notes she took of their interview or other communications. *See* Tobin Decl., Ex. B at 14-16. Nor did defense counsel proffer, let alone introduce, any newsgathering materials as evidence at the hearing other than the published telecast itself. *Id.* at 12-14. Rather, for the purpose of challenging Defendant's pretrial detention, defense counsel proffered state-of-mind opinion testimony that, for the reasons discussed *supra*, would be inadmissible at trial. Ms. Shaw's proffered testimony thus did not waive the reporter's privilege in any event.

3. The Privilege Cannot Be Overcome Here

As the D.C. Circuit articulated the standard in *Ahn*, a criminal defendant seeking to compel the disclosure of information from a news organization must first demonstrate that such information is "essential and crucial" to his case. *Ahn*, 231 F.3d at 37 (quoting district court). For all of the reasons set forth *supra*, Defendant cannot do so, because the testimony and evidence Defendant intends to elicit from Ms. Shaw is not even admissible in the first place.

14

This Court should do so as well and find that, even if the subpoena survives review under Rule 17(c), it is properly quashed as seeking privileged material.

## CONCLUSION

For all of the foregoing reasons, the Court should grant this Motion, quash the subpoena, and grant all additional appropriate relief.

Dated: December 2, 2022                    Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles D. Tobin*
Charles D. Tobin (D.C. Bar No. 256308)
Maxwell S. Mishkin (D.C. Bar No. 1031356)
1909 K Street NW, 12th Floor
Washington, D.C. 20006-1157
Telephone: (202) 661-2200
Facsimile: (202) 661-229
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

*Attorneys for Movant Gray Media Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of December 2022, I caused true and correct copies of the foregoing Motion to Quash and Memorandum of Points and Authorities in Support Thereof to be served by email and U.S. Mail First Class on the following:

T. Brent Mayr
Mayr Law P.C.
5300 Memorial Dr., Suite 750
Houston, TX 77007
bmayr@mayr-law.com

*Attorney for Defendant*

Cindy Jane Cho
Assistant U.S. Attorney
U.S. Attorney's Office for
the District of Columbia (detailed)
10 W. Market St., Ste 2100
Indianapolis, IN 46204
cindy.cho@usdoj.gov

Michael Lawrence Barclay
Assistant U.S. Attorney
U.S. Attorney's Office for
the District of Columbia
601 D Street NW
Washington, DC 20530
michael.barclay@usdoj.gov

Francesco Valentini
Criminal Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
francesco.valentini@usdoj.gov

*Attorneys for the United States of America*

/s/ *Charles D. Tobin*
Charles D. Tobin