**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 1:21-cr-00022-CKK** |
| | : | |
| **v.** | : | |
| | : | |
| **CHRISTOPHER RAY GRIDER,** | : | |
| | : | |
| **Defendant** | : | |

## UNITED STATES' MOTION *IN LIMINE* TO EXCLUDE INADMISSIBLE TESTIMONY BY RISSA SHAW

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby moves to exclude the testimony of Rissa Shaw—a reporter with KWTX-TV, a Waco, Texas-based television station—as inadmissible under the Federal Rules of Evidence, at least to the extent Ms. Shaw's proposed testimony aligns with the testimony proffered by defense counsel at the defendant's detention hearing.

### BACKGROUND

1.      On January 6, 2021, the defendant, Christopher Ray Grider, participated in the mob's attack on the U.S. Capitol.  The defendant was part of a large crowd that tried to breach a barricaded door to the Speaker's Lobby, a hallway that connects to the House of Representatives Chamber in the U.S. Capitol Building.  The doorway, which had been barricaded from the inside, was being guarded by three Capitol Police officers.  The defendant was one of the first individuals to reach the door to the Speaker's Lobby, and as the crowd rapidly swelled, he stood near the front of the crowd.  The defendant had a black helmet with him, which he had carried throughout the U.S. Capitol Building.  After another rioter repeatedly punched the glass panels of the doorway immediately behind the officers with his fists (causing the glass to splinter), the defendant handed

that individual his black helmet.  The defendant also knocked on the top of the helmet, signifying

that it was hard, and the other rioter accepted it.

Shortly thereafter, when the three officers guarding the door appeared to move to an

adjacent wall, the defendant moved in and attempted to push open the doors to breach the doorway.

The rioter who had accepted the helmet from the defendant then used the defendant's helmet to

resume punching the glass panels of the doorway, further shattering the glass.  Within seconds, the

defendant was observed backing away from the Speaker's Lobby door as individuals in the crowd

were screaming "gun."  Moments later, a woman was shot by an officer on the other side of the

door while attempting to climb through one of the glass panels that the rioters had smashed out

with the helmet.

Later on January 6, 2021, the defendant contacted Rissa Shaw, a journalist with KWTX-

TV, a Waco, Texas TV station, about the events that transpired at the Capitol.  That evening,

KWTX-TV News 10 aired a story that featured the defendant on one of the program's segments.

During the segment, the defendant admitted to being inside the United States Capitol building

within several feet from the woman (later identified as "Ashli Babbitt") who was shot outside the

Speaker's Lobby door.

2.     On January 20, 2021, the defendant was charged by complaint.  At a detention

hearing held on January 27, 2021, the defendant proffered testimony by Rissa Shaw, who was

present by videoconference but did not testify.  As relevant here, Grider's defense counsel made

the following proffer of Ms. Shaw's testimony:

> She would testify that … [i]n talking with Mr. Grider, he was clear,
> he was calm. She did not at any point ever think that he was a threat
> to anyone. She did not -- she did not think that he was engaged in
> any violent acts.  She testified—she would testify that in talking with
> him, she never—it never even really crossed her mind that he was
> committing any crime.  It was her belief that he was reporting what

> he saw, but there was never any indication of him acting maniacally,
> or espousing radical reviews, or anything of the sort.  He was very
> clear, calm, lucid, and really felt that his only purpose was to just
> report and document what was taking place.

Det. Hrg. 14-16.[1]  The grand jury later charged the defendant with several offenses, including civil

disorder, obstruction of an official proceeding, and destruction of government property.  Trial is

scheduled to begin on December 12, 2022.  On November 21, 2022, the defendant served a trial

subpoena on Ms. Shaw.  On December 2, 2022, Gray Media Group, Inc., the entity that owns and

operates the TV station where Ms. Shaw works (KWTX-TV), moved to quash the subpoena.  ECF

No. 135.  On December 5, 2022, Ms. Shaw filed a motion to join Gray's motion to quash.  ECF

No. 137.  As the government has stated in a separate filing (ECF No. 138), the government takes

no position with respect to KWTX-TV's and Ms. Shaw's motions to quash.

## ARGUMENT

As noted, the government takes no position on the non-parties' motions to quash Ms.

Shaw's trial subpoena (ECF Nos. 135, 137).  Regardless of the outcome of those motions,

however, Ms. Shaw's proposed testimony is inadmissible under the Federal Rules of Evidence, at

least to the extent that it tracks the testimony that Grider's defense counsel proffered at the

detention hearing.  This Court should exclude it.

At the defendant's detention hearing, defense counsel proffered that Ms. Shaw would

testify as to two principal assertions—both based on Ms. Shaw's telephone conversation with the

defendant on January 6, 2021: (i) that, when the two spoke, the defendant was "clear, calm, [and]

lucid"; and (ii) that the defendant "really felt that his only purpose was to just report and document

---

[1]      The remainder of defense counsel's proffer regarding Ms. Shaw's testimony at the
defendant's detention hearing pertained to issues not germane to the issues presented at trial.  Det.
Hrg. 14-16.

what was taking place."  Det. Hrg. 15.  Similarly, in recent conversations with the non-parties'

attorneys, Grider's defense counsel reportedly suggested that he plans to elicit testimony about

"(1) what Defendant said to [Ms. Shaw]"; and "(2) her impressions of Defendant's mental state at

the time of the interview."  ECF No. 135-1 at 2.  The proposed testimony constitutes inadmissible

hearsay.  To the extent it does not, it is irrelevant.

Although the contours of Ms. Shaw's proposed testimony remain unclear, it appears that

the bulk of Ms. Shaw's proposed testimony will boil down to "what Defendant said to her."  ECF

No. 135-1 at 2; *see also* Det. Hrg. 15.  Such testimony falls squarely within Rule 801(c)'s definition

of hearsay—*i.e.*, an out-of-court statement that "a party offers in evidence to prove the truth of the

matter asserted in the statement."

Nor is any exception to the rule against hearsay applicable.  First, the defendant's

statements would not constitute "present sense impression[s]" under Rule 803(1), because they are

not "statement[s] describing or explaining *an event or condition[]* made while or immediately after

the declarant perceived it."  *Id.* (emphasis added).  Putting aside the question of whether the

defendant spoke to Ms. Shaw "immediately after"—as opposed to some time after—the relevant

events, there is no indication that the defendant plans to elicit testimony "describing or explaining

an event or condition" in the first place.  Fed. R. Evid. 803(1).  And no wonder: the relevant events

are more than adequately described and explained in the ample video evidence capturing what

occurred outside the Speaker Lobby's door on the afternoon of January 6, 2021.  Instead, the

defendant apparently plans to use his statements to Ms. Shaw to prove not an "event or condition,"

but the defendant's own intentions some time earlier on January 6.  Nothing in Rule 803(1)'s text

or rationale—*i.e.*, the notion that "substantial contemporaneity of event and statement negate the

likelihood of deliberate of conscious misrepresentation," Fed. R. Evid. 803, 1972 advisory

committee note—authorizes such use of out-of-court statements. *See id.* (explaining that "[p]ermissible *subject matter* of the … [Fed. R. Evid. 803(1) exception] is limited … to description or explanation of the event or condition, the assumption being that spontaneity, in the absence of a startling event, may extend no farther").

Second, and related, the proposed evidence does not constitute an "[e]xcited [u]tterance." Fed. R. Evid. 803(2).  Indeed, the defendant apparently plans to use his telephone conversation with Ms. Shaw to show the opposite: that he was "very clear, calm, [and] lucid" when he spoke to Ms. Shaw on January 6.  Det. Hrg. 15.  *See* Fed. R. Evid. 803, 1972 advisory committee note ("The theory of [Fed. R. Evid. 803(2)] is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication.").

Third, the proposed testimony is not a statement of the defendant's "then-existing state of mind (such as motive, intent, or plan) or emotional … condition (such as mental feeling[)]" within the meaning of Federal Rule of Evidence 803(3).  That is because exception (3) expressly does not permit the use of "a statement of memory or belief to prove the fact remembered or believed." *Id.*; *see also* Fed. R. Evid. 803(3), 1972 advisory committee note ("The exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule[.]").  Yet that is precisely what the defendant appears to propose here: he proposes that Ms. Shaw will testify about the defendant's *after-the-fact* statements about his own past intent and purpose in engaging in the relevant acts some time earlier—*i.e.*, that,

purportedly, "his only purpose" had been to "just report and document what was taking place." Det. Hrg. 15.  Exception (3) is, therefore, also inapposite.[2]

In the end, the only testimony that a witness in Ms. Shaw's position might, in theory, be permitted to offer is, in some cases, a lay opinion about the tone of the defendant's voice—to the extent the opinion is sufficiently independent of the content of the declarant's statements.  *See* Fed. R. Evid. 701.  But whatever opinion Ms. Shaw might have formed about the defendant's tone during their conversation on January 6 is not, in this case, "helpful to clearly understanding [a] witness's testimony or to determining a fact in issue."  Fed. R. Evid. 701(b).  The defendant's tone when he spoke to Ms. Shaw has minimal, if any, relevance to the issues presented in this case: (i) whether the defendant committed the acts charged in the indictment; and (ii) whether he acted with the requisite mens rea.  Indeed, to the extent Ms. Shaw's lay opinion of the defendant's tone has any relevance, it appears to undermine the defendant's apparent defense in this case: if the defendant is right that he came across as "clear, calm, [and] lucid," Det. Hrg. 15, that would only confirm that he was capable of having the mens rea required for, *inter alia*, obstruction of an official proceeding.

## CONCLUSION

For the foregoing reasons, if the Court does not grant the non-parties' motions to quash the trial subpoena for Ms. Shaw, the Court should exclude her testimony on evidentiary grounds.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

---

[2]      Lest there be any confusion, because the defendant proposes to elicit his own out-of-court statements to Ms. Shaw, the statements are not admissible as statements of a party opponent.  *See* Fed. R. Evid. 801(d)(2).

By:     /s/ Francesco Valentini

FRANCESCO VALENTINI
Trial Attorney
D.C. Bar No. 986769
U.S. Department of Justice, Criminal Division
Detailed to the D.C. U.S. Attorney's Office
601 D Street NW
Washington, D.C.  20530
(202) 598-2337
francesco.valentini@usdoj.gov


CINDY J. CHO
Assistant United States Attorney
Member of NY Bar

MICHAEL BARCLAY
Assistant United States Attorney
Member of NY Bar